ANNEMARIE BROWN *vs.* NUTTER, McCLENNEN & FISH
& another.[1]

No. 96-P-1903.

Barnstable. February 6, 1998. - July 21, 1998.

Present: GREENBERG, LENK, & BECK, JJ.

*Workers' Compensation Act,* Exclusivity provision, Emotional distress, Action against coemployee. *Attorney at Law,* Attorney-client relationship. *Emotional Distress. Negligence,* Emotional distress.

The exclusivity provision of the workers' compensation act, G. L. c. 152, § 24, barred an employee's action against her employer for intentional infliction of emotional distress arising out of and in the course of her employment. [214-215]

A claim against a law firm for intentional infliction of emotional distress was properly dismissed, where there was no averment in the plaintiff's amended complaint of an attorney-client relationship. [215]

A Superior Court judge incorrectly dismissed an employee's claim against a coemployee for intentional infliction of emotional distress, where the alleged acts of the coemployee were not shown necessarily to have been committed within the scope of his employment and in the furtherance of his employer's interest so as to bar the claim under the exclusivity provision of the workers' compensation act, G. L. c. 152, § 24. [216-218]

In a civil action, the plaintiff's allegation of the defendant's intentional infliction of emotional distress was sufficient to state a claim. [218-219]

CIVIL ACTION commenced in the Superior Court Department on November 8, 1995.

The case was heard by *Richard F. Connon,* J., on motions to dismiss.

*Jennifer R. DeFeo* for the plaintiff.

*James R. DeGiacomo (Judith K. Wyman* with him) for Edward F. McLaughlin, Jr.

*Sharon R. Burger* for Nutter, McClennen & Fish.

*Deborah M. Silva,* for Massachusetts Chapter of the National

---

[1] Edward McLaughlin, Jr.

Employment Lawyers Association, amicus curiae, submitted a brief.

LENK, J. The plaintiff, Annemarie Brown, appeals from the dismissal of her complaint charging the defendants, Nutter, Mc-Clennen & Fish and Edward McLaughlin, Jr., with intentional infliction of emotional distress. The Superior Court judge dismissed Brown's claims upon motions brought by the defendants pursuant to Mass.R.Civ.P. 12(b)(6), 365 Mass. 755 (1974), concluding that the two claims are barred under the exclusivity provision of the workers' compensation act. On appeal, Brown contends that the judge erred (a) in dismissing her claim against the defendant law firm Nutter, McClennen & Fish (NM&F), which, she argues, was not only her employer but also her legal counsel and provided her, in the latter capacity, with poor legal advice which furthered and concealed the improper actions of its employee McLaughlin; and (b) in dismissing her claim against the defendant attorney McLaughlin because his actions, which she avers caused her severe emotional distress, were neither in the course of his employment nor in furtherance of the interests of his employer. Brown's basic contention is that neither claim is barred by the exclusivity provision of the workers' compensation act. We conclude that Brown's claim against NM&F was properly dismissed but that it was error to have dismissed her claim against McLaughlin.

1. *Background.* We summarize the facts as they appear in Brown's complaint, drawing all inferences favorably to her, as we must. *Harvard Law Sch. Coalition for Civil Rights* v. *President & Fellows of Harvard College*, 413 Mass. 66, 68 (1992). Brown worked as a legal secretary for the law firm of NM&F for nine years (1986-1995), the first seven of which were spent at the Hyannis office working with McLaughlin, an attorney at the firm. Brown alleges that during the time she worked with McLaughlin, he manipulated and compelled her to conduct his personal affairs both during and outside of work hours. She asserts that he used her to conceal his personal problems and on numerous occasions forced her to do things which he knew or should have known were offensive and improper. On November 9, 1992, McLaughlin, for his own personal gain, had Brown forge his wife's signature on a mortgage note for his home and then notarize the forged document. Brown acquiesced in so doing only after her initial refusal was countered by McLaughlin's tears and threatened suicide.

Immediately after Brown signed and notarized the falsified document, she began to suffer from uncontrollable crying and hysteria. She reported the incident shortly thereafter to attorney Patrick Butler, her supervisor and a partner in NM&F. Butler informed her that since the McLaughlin mortgage had already been recorded there was nothing he could do. Brown left work that day and was unable to return to work for the next week. She remained confined to her bed, suffering from nightmares, anxiety attacks, and uncontrollable crying. While Brown was in this condition, McLaughlin contacted her on more than one occasion by telephone, despite her request that he stop doing so and instructions to him from Butler that he not contact Brown.

After the November, 1992, incident, Brown continued to work for McLaughlin until 1993; he persisted in having her handle his personal affairs and conceal his personal problems. In 1993, Brown was transferred to the firm's Boston office, where she worked until 1995. Despite counseling, Brown alleges that she suffers still from nightmares and anxiety attacks as a result of McLaughlin's actions.

2. *Intentional infliction of emotional distress: NM&F.* Brown's claim against the law firm arises from Butler's alleged condonation and attempted cover-up of McLaughlin's improper activities and from his having purportedly rendered to her flawed legal advice in a context fraught with conflict of interest. Her claim fails for two separate reasons. First, to the extent that Brown claims that Butler was acting in his supervisory capacity at NM&F, her employer, Brown's claim is barred by the exclusivity provision of the workers' compensation act. Second, to the extent that Brown now seeks to hold NM&F accountable for Butler's bad legal advice, she exceeds by a wide margin the borders of her complaint, in which there is not the faintest suggestion that any lawyer-client relationship existed between Butler and Brown.

a. *Exclusivity.* The exclusivity clause of the workers' compensation act, G. L. c. 152, § 24, as amended by St. 1991, c. 398, § 43, provides in relevant part that "[a]n employee shall be held to have waived his right of action at common law . . . in respect to an injury that is compensable under this chapter, to recover for personal injuries, if he shall not have given his employer, at the time of his contract of hire, written notice that he claimed such right. . . ." See *Foley* v. *Polaroid Corp.*, 381 Mass. 545, 548 (1980). In the absence of such written notice, as

here, G. L. c. 152, § 26, bars common law actions against employers where (1) the plaintiff is shown to be an employee; (2) her condition is shown to be a personal injury within the meaning of the workers' compensation act; and (3) the injury is shown to have arisen out of and in the course of her employment. *Foley, supra* at 548-549. All three criteria are met here as to Brown's claim against NM&F. First, Brown acknowledges that she was at all relevant times an employee of NM&F. Second, emotional distress of the type alleged here is a personal injury compensable under the act. *Id.* at 550. *Green* v. *Wyman-Gordon Co.,* 422 Mass. 551, 558 (1996). See G. L. c. 152, § 1(7A). Third, Brown's injury arose from acts occurring during the workday at NM&F while working with McLaughlin. Brown does not allege that there were any circumstances other than the conditions of her employment at NM&F that played any part in her involvement in signing and notarizing McLaughlin's mortgage documents. We note that this third criterion — that the injury arise from the employment — is to be broadly construed, so that an injury which arises "out of the employment looked at in any of its aspects" is subject to the act's exclusivity provision. *Doe* v. *Purity Supreme, Inc.,* 422 Mass. 563, 566 (1996), quoting from *Caswell's Case,* 305 Mass. 500, 502 (1940). In determining whether such personal injury claims against the employer are compensable solely under the act, it is without consequence that the coemployee causing the injury may not have been acting in the course of his own employment or furthering their mutual employer's interest. *Foley, supra. Green, supra* at 558. *Doe, supra* at 565-566.

b. *Attorney-client relationship.* Brown argues on appeal that she brings her claim against NM&F not as an employee (whose exclusive remedy would be under the workers' compensation act) but as a client who had sought legal advice. On appeal, however, we look only to the allegations of Brown's amended complaint against NM&F in determining whether the judge erred in dismissing it. See *General Motors Acceptance Corp.* v. *Abington Cas. Ins. Co.,* 413 Mass. 583, 584 (1992). Even upon the most generous reading, we can discern no averment in Brown's amended complaint to support her assertion that she brings her claim against the law firm as a client or that Butler in any way held himself out to Brown as her lawyer. There was no error in the allowance of NM&F's motion to dismiss Brown's claim.

3. *Intentional infliction of emotional distress: McLaughlin.* McLaughlin defends the dismissal of Brown's claim against him on two grounds. First, he claims for himself as a coemployee the same protection from civil suit for his tortious acts that his employer enjoys pursuant to the exclusivity provision of the workers' compensation act. Second, he argues that in any event Brown's allegations against him do not state a cognizable claim for intentional infliction of emotional distress. Both grounds fail him, and we conclude that it was error to dismiss Brown's complaint against her coemployee.

a. *Coemployee immunity.* The purpose of the workers' compensation act is to ensure that employees who give up their common law rights to sue their employers will not be without recourse, but will have a mechanism to be reimbursed for their employment-related injuries "regardless of fault or foreseeability." *Neff* v. *Commissioner of Dept. of Indus. Accs.*, 421 Mass. 70, 75 (1995). The workers' compensation act provides to employees who are injured on the job the exclusive remedy against their employers who, by paying workers' compensation insurance premiums, are protected from civil suits. It also provides the exclusive remedy against coemployees who engage in tortious conduct within the course of their employment and in furtherance of the employer's interest. *O'Connell* v. *Chasdi*, 400 Mass. 686, 690-691 (1987). *Catalano* v. *First Essex Sav. Bank*, 37 Mass. App. Ct. 377, 381-382 (1994). *Fusaro* v. *Blakey*, 40 Mass. App. Ct. 120, 123 (1996).

Coemployees themselves, however, are not immunized from suit by the workers' compensation act for tortious acts which they commit outside the scope of their employment, which are unrelated to the interest of the employer. See Locke, Workmen's Compensation § 10.5, at 273 (Nason & Wall Supp. 1995). Nothing to the contrary is suggested by the Supreme Judicial Court's decisions in *Green* v. *Wyman-Gordon Co.*, *supra*, and *Doe* v. *Purity Supreme, Inc.*, *supra*, or by this court's decision in *Fusaro* v. *Blakey, supra.*[2] Chapter 152, § 24, therefore, does not immunize McLaughlin from Brown's claim of intentional inflic-

---

[2]In *Green*, the injured employee sued only the employer and not the coemployee tortfeasor. In *Doe*, the injured employer sued the employee and a co-employee but not the coemployee tortfeasor alleged to have raped her. Coemployee immunity issues under the workers' compensation act were accordingly not addressed in these decisions. In contrast, we held in *Fusaro* that the injured employee's claim against coemployees for intentional infliction of emotional distress was barred by c. 152, § 24, since the trial evidence showed

tion of emotional distress if his alleged tortious conduct was not within the course of his employment or did not further NM&F's interest. See 1 Gargano, Massachusetts Workers' Compensation § 1.05, at 1-189 (3rd ed. 1994). The question then becomes whether McLaughlin's purportedly tortious conduct arose within the course of his employment and whether it furthered NM&F's interest. Our case law suggests the necessity of a fact-intensive analysis to answer these questions.

In *O'Connell* v. *Chasdi*, *supra*, the defendant Chasdi was the director of an educational institute and O'Connell was his assistant. The evidence at trial showed that during an international business trip, Chasdi engaged in a series of unwanted sexual advances and other objectionable actions of a sexual nature against O'Connell. While this conduct was done in the course of Chasdi's employment, the tortious acts which the jury found he committed, viz., assault and battery and intentional infliction of emotional distress, "were not remotely related to the employer's interests." 400 Mass. at 690 n.5. The Supreme Judicial Court was clear that it did "not think that the right to commit such acts with impunity was part of the general compromise of rights involved in the act. Moreover, liability for such intentional torts is not part of the circumstances of employment, unlike liability for negligently injuring others in the course of employment. Such intentional torts are not an accepted risk of doing business." *Id.* at 690-691.

In *Anzalone* v. *Massachusetts Bay Transp. Authy.*, 403 Mass. 119 (1988), the employee police officer sued the Massachusetts Bay Transportation Authority and his supervisor, alleging that the latter intentionally harassed him and interfered with his employment by, among other things, ordering him to perform menial and dirty jobs, and requiring him to work in an overheated and unventilated room and in conditions where other employees smoked in his presence. The complained of conduct, however, "related wholly to [the coemployee supervisor's] position as Anzalone's supervisor and to the manner in which [he] exercised his supervisory duties." *Id.* at 125. Hence, the coemployee's conduct was in the course of his employment in furtherance of the employer's interest.

In *Fusaro* v. *Blakey*, *supra*, we vacated the judgment for the plaintiff employee on his claim for intentional infliction of

that the coemployees were acting in the course of their employment and in furtherance of their employer's interest.

·emotional distress against two coemployees who, as members of the campus police, overzealously interrogated the employee as part of a campus drug investigation. We did so because the coemployees were acting in furtherance of their employer's interest in the drug investigation and "[h]owever distorted [their] understanding of the proper performance of their duties may have been, we cannot say that they were acting outside the scope of their employment." 40 Mass. App. Ct. at 124.

Here, Brown has alleged that McLaughlin compelled her, as his legal secretary, by the threat of suicide and the display of tears to forge and then notarize a mortgage note on McLaughlin's own home. She asserts that, in so doing, McLaughlin was acting for his own personal gain and not to further the law firm employer's interest. Unlike the conduct in *Anzalone, supra,* and *Fusaro, supra,* it is not self-evident that McLaughlin's alleged conduct in causing his secretary to falsify legal documents for his own personal benefit and his behavior thereafter was in whole or in part job-related or furthered the law firm's interest. At this early stage of the proceeding, it is premature to say that Brown, after conducting discovery, will be unable to prove any set of facts demonstrating that McLaughlin was acting neither within the course of his employment nor in furtherance of his employer's interest. See *Catalano* v. *First Essex Sav. Bank, supra* at 382. We note in this regard that the test to be used in determining whether McLaughlin was acting within the course of his employment is an objective one, viz., a test "which assesses what the employee did and other facts in order to determine whether he acted at least in part for a job-related purpose." *Mulford* v. *Mangano,* 418 Mass. 407, 412 (1994).

b. *Sufficiency of the allegations.* In order to state a cognizable claim for intentional infliction of emotional distress, Brown must allege that (1) McLaughlin "intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct"; (2) McLaughlin's "conduct was extreme and outrageous, was beyond all possible bounds of decency and was utterly intolerable in a civilized community"; (3) McLaughlin's "actions . . . were the cause of [Brown's] distress"; and (4) "the emotional distress [she] sustained . . . was severe and of a nature that no reasonable [person] could be expected to endure it." *Agis* v. *Howard Johnson Co.,* 371 Mass. 140, 144-145 (1976) (internal citations and quotations omitted). Brown's complaint satisfies these

requirements. Brown claims to have suffered serious emotional harm and to have been bedridden for a week after the incident involving the lawyer for whom she had worked many years, who caused her to engage in illegal conduct for his own benefit. Even after she requested that McLaughlin stop contacting her, he continued to do so. See *Boyle* v. *Wenk*, 378 Mass. 592 (1979). "There is an issue for the jury if reasonable people could differ on whether the conduct is 'extreme and outrageous.' " *Id.* at 597, quoting from *Agis, supra* at 145-146. Brown accordingly alleges facts and circumstances that could lead a trier of fact reasonably to conclude that McLaughlin's conduct as alleged in the amended complaint was extreme and outrageous, having a severe and traumatic effect upon Brown's emotional tranquility and her health. See *Agis, supra* at 145.

4. *Conclusion.* We affirm that portion of the judgment dismissing Brown's complaint against Nutter, McClennen & Fish, vacate the portion of the judgment dismissing her complaint against McLaughlin, and remand the case to the Superior Court for further proceedings.

*So ordered.*