Fecteau, J.
*159 INTRODUCTION
This action arises out of the termination of plaintiffs Kimberly Barthelmes and Karen LaMagdeliene (“plaintiffs”) by defendant Olympus Health Care Group, Inc. (“Olympus”) after a co-employee, defendant Paula Martineau (“Martineau”), made a complaint against them for sexual harassment. Plaintiffs have filed the following claims: a claim against Olympus for a violation of the Massachusetts Civil Rights Act, G.L.c. 12, §1II (Count I); a claim against Martineau for defamation (Count III); and claims against Olympus and Martineau for intentional or negligent infliction of emotional distress (Count II), and wrongful termination (Count IV). Defendants have filed a motion to dismiss under Rule 12(b)(6), seeking to dismiss Counts I, II and IV. For the reasons discussed below, the defendants’ motion is allowed in part and denied in part.
BACKGROUND
The facts, as taken from the complaint, are as follows. Olympus employed Kimberly Barthelmes (“Barthelmes”) as a Clinical Supervisor in occupational therapy from March 18, 1996 until August 18, 1998, and employed Karen LaMagdeliene (“LaM-agdeliene”) as a Rehab Technician from April 1, 1996 until August 18, 1998. Throughout this period, the quality and quantity of their work consistently met or exceeded the requirements of their jobs. As a Clinical Supervisor, Barthelmes provided a positive working environment, which was sensitive to the needs of the employees and organization, and she worked effectively with all individuals in a nondiscriminating manner.
On or about August 13, 1998, Hollyanne Peck (“Peck”), a Building Rehab Team Leader for Olympus, told Barthelmes that Martineau had called Peck at home. Martineau told Peck that Martineau had overheard a private conversation behind closed doors between Peck, LaMagdeliene and Barthelmes, in which Martineau was being discussed. In the conversation overheard by Martineau, Peck, who is admittedly of homosexual orientation, made reference to Martineau’s sexual orientation, who is allegedly of homosexual orientation.[3]
On or about August 14, 1998, a meeting was held between LaMagdeliene and Linda Rahm, Regional Director of Operations for Olympus, in which LaM-agdeliene was asked about the conversation between Peck, Barthelmes and LaMagdeliene. LaMagdeliene told Rahm what she knew of the conversation. Rahm then informed LaMagdeliene that Martineau had filed a sexual harassment complaint, and that she was named in the complaint. Barthelmes was, presumably, also named in the complaint.
On or about August 17, 1998, Rahm told LaM-agdeliene and Barthelmes that they were being suspended during the investigation process of the sexual harassment complaint. Peck, however, was not suspended, On or about August 18, 1998, Rahm told LaMagdeliene and Barthelmes over the telephone that they were being terminated because Olympus’s attorney said that they were a liability due to the sexual harassment complaint.
DISCUSSION
When evaluating the sufficiency of a complaint pursuant to Mass.R.Civ.P. 12(b)(6), the Court must accept as true the factual allegations of the complaint, as well as any reasonable inferences to be drawn from them in the plaintiffs favor. See Eyal v. Helen Broadcasting Corp., 411 Mass. 426, 429 (1991), and cases cited. “(T]he complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.” Nader v. Citron, 372 Mass. 96, 98 (1977) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); see also Charbonnier v. Amico, 367 Mass. 146, 152 (1975); Whitinsville Plaza, Inc. v. Kotseas, 378 Mass. 85, 89 (1979). “A complaint is not subject to dismissal if it would support relief on any theory of law.” Whitinsville Plaza, Inc., 378 Mass. at 89.
I. Count I — Violation of the Massachusetts Civil Rights Act
In Count I, the plaintiffs allege that Olympus terminated them in violation of the Massachusetts Civil Rights Act (“MCRA”), G.L.c. 12, §111, “by interfering with their exercise or enjoyment of rights secured by the constitution of the United States, or of rights secured by the constitution or laws of the Commonwealth.” (Complaint, par. 19.) According to the complaint, Olympus violated the MCRA because the plaintiffs’ termination “was based on unreliable, unfounded evidence.” (Id., par. 20.) Additionally, the termination “was carried out in violation of personnel procedure!,]” and was a pretext to disguise the real motivation behind their termination, i.e., “to protect the company from an alleged, unfounded sexual harassment complaint.” (Id.)
To state a claim under the MCRA, the plaintiff must allege “(1) that her ‘exercise or enjoyment of rights secured by the constitution or laws of the United States, or rights secured by the constitution or laws of the commonwealth, has been interfered with, or attempted to be interfered with,’ and (2) that the interference or attempted interference was by ‘threats, intimidation or coercion.’ ” Appleton v. Hudson, 397 Mass. 812, 817 (1986) (quoting G.L.c. 12, §§11H, III).
A “threat” “involves the intentional exertion of pressure to make another fearful or apprehensive of injury or harm.” Planned Parenthood League of Mass., Inc. v. Blake, 417 Mass. 467, 474 (1994) (citations omitted), cert. denied, 513 U.S. 868 (1994). “ ‘Intimidation’ involves putting in fear for the purpose of compelling or deterring conduct.” Id. “Coercion” involves “the appli *160 cation to another of such force, either physical or moral, as to constrain him to do against his will something he would not otherwise have done.” Id. (quoting Websters’ New International Dictionary at 519 (2d. ed. 1959) (citation omitted)).
A. Failure to Allege Threats, Intimidation, or Coercion
Olympus argues that the complaint fails to state a claim under the MCRA because it is devoid of allegations that Olympus, or its employees, engaged in threats, intimidation or coercion. The Court agrees. The complaint does not allege any conduct by Olympus, or its employees, that would constitute threats, intimidation, or coercion. Accordingly, the complaint fails to state a claim under the MCRA. See Appleton, 397 Mass. at 817 (concluding that a claim was properly dismissed because the complaint did not allege “any conduct by anybody that [could] be considered a ‘threat, intimidation or coercion’ ” (citation omitted)); Rosenfeld v. Board of Health of Chilmark, 27 Mass.App.Ct. 621, 627 (1989) (“Since the complaint fails to allege any conduct by anyone that could be considered a ‘threat, intimidation or coercion,’ it fails to state a claim under the Massachusetts Civil Rights Act”).
B. Failure to allege Interference With a Secured Right
Additionally, Olympus argues that the complaint also fails to identify a secured right that was interfered with in violation of the MCRA. The complaint simply restates, in a conclusory fashion, that Olympus has interfered with their constitutional or statutory rights. Such conclusory allegations fail to state a claim under the MCRA. See Hobson v. McLean Hosp. Corp. 402 Mass. 413, 417-18 (1988) (deciding that the plaintiff failed to state a claim under the MCRA because she failed to identify what rights were at issue, and made “conclusory allegations, amounting to a summarization of G.L.c. 12, §§11H-1 II” (citation omitted)).
Furthermore, to the extent that the plaintiffs allege interference with their employment, this interference is not actionable under the MCRA. Because the plaintiffs have not alleged that they had an express or implied contract for a definite period of employment, or that they had a contract based on a personnel manual, they were employees “at will.” See Jackson v. Action for Boston Community Dev., Inc., 403 Mass. 8, 9, 13-15 (1988). “Employment at will is terminable by either the employee or the employer without notice, for almost any reason or for no reason at all. ” Id. (citations omitted). Thus, at-will employees do not have a secured right to employment, and, accordingly, Olympus’s termination of the plaintiffs is not actionable conduct under the MCRA. See Webster v. Motorola, Inc., 418 Mass. 425, 430 (1994).
II. Count II — Intentional or Negligent Infliction of Emotional Distress
In Count II, the plaintiffs allege that Olympus and Martineau “intentionally or negligently and without justification inflicted severe emotional distress” upon the plaintiffs “by extreme and outrageous behavior ...” (Complaint, par. 23). As a result, the plaintiffs allege that they “suffered loss of income and employment benefits, loss of business and personal reputation, other financial losses, and mental and emotional distress.” (Id., par. 24.) Although the complaint is unclear, these claims are presumably based on Martineau’s filing of a sexual harassment complaint against the plaintiffs, and Olympus’ subsequent termination of the plaintiffs.
A. Exclusivity Provision of the Workers’ Compensation Act
Defendants argue that these claims are barred under the exclusivity provisions of the Massachusetts Workers’ Compensation Act, G.L.c. 152, §24, and therefore fail to state a claim upon which relief can be granted. General Laws c. 152, §24 (1999 ed.) of the Workers’ Compensation Act provides, in relevant part, that “[a]n employee shall be held to have waived [her] right of action at common law ... in respect to an injury that is compensable under this chapter, to recover damages for personal injuries, if [she] shall not have given [her] employer, at the time of [her] contract of hire, written notice that [she] claimed such right ...” There is no allegation within the complaint that such notice was given by the plaintiffs, so the issue is whether the Act’s exclusivity provision applies to their claims.
1. Olympus
When the complaint is read in the plaintiffs’ favor, it alleges that Olympus intentionally or negligently caused them emotional distress by terminating them based on unreliable, unfounded evidence. Common law actions against employers are barred by the exclusivity provisions of the Workers’ Compensation Act when “(1) the plaintiff is shown to be an employee; (2) her condition is shown to be a personal injury within the meaning of the workers’ compensation act; and (3) the injury is shown to have arisen out of and in the course of her employment." Brown v. Nutter, McClennen & Fish, 45 Mass.App.Ct. 212, 215 (1998) (citation omitted); see also Foley v. Polaroid Corp., 381 Mass. 545, 548-49 (1980) (Foley I) (quoting G.L.c. 152, §26).
All three of these criteria are met with regard to the plaintiffs’ claims for intentional and negligent infliction of emotional distress against Olympus. First, although they were suspended, the plaintiffs were employees of Olympus at the time of the termination. Second, their condition is a “personal injury” within the meaning of the Workers’ Compensation Act. See Green v. Wyman-Gordon Co., 422 Mass. 551, 560-61 (1996) (claims for negligent infliction of emotional *161 distress are barred by the exclusivity provisions of G.L.c. 152 whether they are the result of a bona fide personnel action or not); Foley, 381 Mass. at 549-50 (claims for intentional infliction of emotional distress covered by the Workers’ Compensation Act); G.L.c. 152, §1(7A) (1999 ed.).
Third, the plaintiffs’ emotional injuries, which resulted from their termination, arose out of and in the course of their employment. See Simmons v. Merchants Mut. Ins. Co., 394 Mass. 1007, 1007-08 (1985) (holding that the plaintiffs claim of intentional infliction of emotional distress against his employer as a result of the employer’s bad faith termination of his employment was barred by the exclusivity provision of the Workers’ Compensation Act).[4] Accordingly, the plaintiffs’ claims for negligent and intentional infliction of emotional distress against Olympus are dismissed.
2. Martineau
The Workers’ Compensation Act “also provides the exclusive remedy against coemployees who engage in tortious conduct within the course of their employment and in furtherance of the employer’s interest.” Brown, 45 Mass.App.Ct. at 216 (citations omitted). However, coemployees themselves “Eire not immunized from suit by the Workers’ Compensation Act for tor-tious acts which they commit outside the scope of their employment, which are unrelated to the interest of the employer.” Id. (Citation omitted.)
When reasonable inferences are drawn in the plaintiffs’ favor, the complaint alleges that Martineau knowingly or negligently filed a meritless claim of sexual harassment against the plaintiffs, which caused them severe emotional distress. It is not in Olympus’s interest for an employee to make a merit-less sexual harassment claim. Accordingly, the plaintiffs’ emotional distress claims against Martineau fall outside of the exclusivity provision of the Workers’ Compensation Act. The next issue, therefore, is whether the complaint, with regard to Martineau, states sufficient facts to satisfy the elements of intentional and negligent infliction of emotional distress.
a. Intentional Infliction of Emotional Distress
In order to state a claim for intentional infliction of emotional distress, plaintiffs must allege: (1) that Mar-tineau intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of her conduct; (2) that the conduct was extreme and outrageous, beyond all possible bounds of decency and utterly intolerable in a civilized society; (3) that these actions caused the plaintiffs’ distress; and (4) that the plaintiffs’ distress was severe and of such a nature that no reasonable person could be expected to endure it. See Tetrault v. Mahoney, Hawkes & Goldings, 425 Mass. 456, 466 (1997); Agis v. Howard Johnson Co., 371 Mass. 140, 144-45 (1976).
Defendants argue that the plaintiffs have failed to allege conduct that rises to the level of extreme and outrageous behavior. Because reasonable jurors could differ with regard to whether a co-employee’s act of knowingly filing a meritless sexual harassment claim constitutes extreme and outrageous conduct, the plaintiffs’ claim for intentional infliction of emotional distress against Martineau survives a motion to dismiss. See Agis, 371 Mass. at 145.
b. Negligent Infliction of Emotional Distress
In order to state a claim for negligent infliction of emotional distress, the plaintiff must allege “(1) negligence; (2) emotional distress; (3) causation; (4) physical harm manifested by objective symptomatology; and (5) that a reasonable person would have suffered emotional distress under the circumstances.” Payton v. Abbott Labs, 386 Mass. 540, 557 (1982). The plaintiffs’ complaint fails to state a claim for negligent infliction of emotional distress because they do not allege physical harm anywhere in the complaint. Accordingly, the plaintiffs’ claim for negligent infliction of emotional distress against Martineau is dismissed.
III. Wrongful Termination
In Count IV, the plaintiffs filed a claim for wrongful termination, alleging that the defendants acted negligently with regard to the plaintiffs’ termination. (See Complaint, pars. 28-30.)
The plaintiffs have not alleged that they had an express or implied contract for a definite period of employment, or that they had a contract based on a personnel manual. As such, they were employees “at will.” See Jackson, 403 Mass. at 9, 13-15. “Employment at will is terminable by either the employee or the employer without notice, for almost any reason or for no reason at all.” Id. at 9 (citations omitted).
Massachusetts has “recognized exceptions to [this] general rule, however, when employment is terminated contrary to a well-defined public policy.” Wright v. Shriners Hosp. For Crippled Children, 412 Mass. 469, 472 (1992). “Redress is available for employees who are terminated for asserting a legally guaranteed right (e.g., filing workers’ compensation claim), for doing what the law requires (e.g., serving on a jury), or for refusing to do that which the law forbids (e.g., committing perjury).” Smith-Pfeffer v. Superintendent of the Walter E. Fernald State School, 404 Mass. 145, 149-50 (1989) (citations omitted). Another recognized exception to the employment-at-will rule is when an employer breaches the implied covenant of good faith and fair dealing by discharging an employee in order to prevent the employee from receiving earned commissions, or similar compensation due for past services. See Gram v. Liberty Mut. Ins. Co., 384 Mass. 659, 671-72 (1981); Fortune v. National Cash Register Co., 373 Mass. 96, 102-06 (1977).
The plaintiffs have not alleged any facts within their complaint that would make out a claim under any of *162 these exceptions to the employment-at-will doctrine. Accordingly, Count IV is dismissed.
ORDER
For the foregoing reasons, the defendant’s motion to dismiss is ALLOWED as to Counts I and IV, and is DENIED as to Count II to the extent that it alleges intentional infliction of emotional distress against defendant Martineau. In all other respects, the defendants’ motion to dismiss is ALLOWED as to Count II.

 Barthelmes and LaMagdeliene are of heterosexual orientation.

 See also Bertrand v. Quincy Market Cold Storage & Warehouse Co., 728 F.2d 568, 572 (1st Cir. 1984) (determining that the plaintiffs emotional distress claim, which arose out of his termination by means of a letter, arose out of and in the course of his employment); Hamilton v. Baystate Medical Educ. and Russian Found., Inc., 866 F.Sup. 51, 56 (D.Mass. 1994) (stating that the exclusivity bar of the Massachusetts workers’ compensation law “applies even where the allegedly injurious actions occur in the course of termination” (citation omitted)), aff'd, 66 F.3d 306 (1995); Lennon v. Walsh, 798 F.Sup. 845, 848 (D.Mass. 1992) (“It appears well settled that claims for personal injury including emotional distress resulting from employment termination, wrongful or otherwise, are precluded by [the] exclusivity provision” of the Massachusetts Workers’ Compensation Act) (quoting Parisi v. Trustees of Hampshire College, 711 F.Sup. 57, 63 (D.Mass. 1989)).