Neel, J.
Plaintiff Judith Lee Beling (“Beling”) filed this action against her former employer, defendant Radiation Monitoring Devices, Inc. (“RMD”), and her former supervisor, defendant Jacob Paster (“Paster”), alleging handicap discrimination under G.L.c. 15 IB (Count I), breach of contract (Count II), and intentional and negligent infliction of emotional distress (Count III). The defendants move for summary judgment, arguing that (1) plaintiff cannot establish a prima facie case for handicap discrimination under chapter 15 IB, and cannot prove that RMD’s legitimate nondiscriminatory reasons for discharging her are pretextual; (2) plaintiff cannot proceed with her claim for failure reasonably to accommodate her disability because she failed to exhaust administrative remedies, and because her claim for reasonable accommodation fails as a matter of law; (3) plaintiffs claim for breach of contract fails because RMD’s personnel manual is not a contract, and because chapter 151B provides the exclusive remedy for discrimination claims; and (4) plaintiffs claims for intentional and negligent infliction of emotional distress are barred by the exclusivity provisions of the workers’ compensation act. For the reasons discussed below, the defendants’ motion is allowed in part and denied in part.
BACKGROUND
The following material facts, as taken from the summary judgment record, are undisputed except as noted. In November of 1990, Beling was hired by RMD as ■ a secretary for RMD’s commercial products division. RMD gave Beling a copy of RMD’s personnel manual on her first day of work. The personnel manual contains an anti-discrimination policy.
Beling has multiple sclerosis (“MS”), and she so informed RMD on or about June 15, 1994. Beling’s MS did not prevent her from performing the essential functions of her job.
In late June of 1994, Beling went on vacation. On July 12, 1994, upon her return to work from vacation, Paster met with Beling and informed her that she was being terminated. Beling alleges that, during this meeting, Paster told her she had “lost it,” which Paster denies. At that time, Beling asked Paster if she could have a transfer to a “less stressful” position. Paster denied her request.
DISCUSSION
The court may grant summary judgment where there are no genuine issues of material fact and where the summary judgment record entitles the moving party to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating that there is no genuine issue of material fact on every *543 relevant issue. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a genuine issue of material fact. See id. at 17.
1. Handicap Discrimination Under G.L.c. 151B
In Count I, Beling alleges that the defendants committed handicap discrimination in violation of G.L.c. 151B, §4(16) by 1) terminating her upon her notifying RMD of her disability, and 2) failing to explore the possibility of an accommodation to her disability and failing to provide a reasonable accommodation. (See plaintiffs Complaint, paras. 46-51.)
a.Standard In Discrimination Claims
General Laws c. 15 IB, §4(16) provides that it shall be an unlawful practice “(f]or any employer ... to dismiss from employment ... or otherwise discriminate against, because of his handicap, any person alleging to be a qualified handicapped person, capable of performing the essential functions of the position involved with reasonable accommodation ...”
Massachusetts has adopted the three-stage order of proof established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 1973). See Blare v. Husky Injection Molding Sys. Boston, Inc., 419 Mass. 437, 440-45 (1995). In the first stage, the burden is on the plaintiff to establish by a preponderance of the evidence a prima facie case of discrimination. Id. at 441. To establish a prima facie case of handicap discrimination, the plaintiff must present evidence that: (1) she is handicapped within the meaning of the statute; (2) she is qualified to perform the essential functions of the position with or without reasonable accommodation; 3) she was terminated; and (4) the employer sought to fill the plaintiffs position. See Dartt v. Browning-Ferris Indus., Inc., 7 Mass. 1, 2 (1998); see also Blare, 419 Mass. at 441. “The prima facie case ‘eliminates the most common nondiscriminatoiy reasons for the plaintiffs rejection,’ thereby creating a presumption of discrimination.” Blare, 419 Mass. at 441 (quoting Texas Dep’t of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981).
Once a prima facie case is established, at stage two the employer can rebut the presumption of discrimination by offering a legitimate nondiscriminatory reason for the plaintiffs termination. See id. (citation omitted); see also Labonte v. Hutchins & Wheeler, 424 Mass. 813, 821 (1997). To satisfy its burden of production, RMD’s explanation “must consist of not only nondiscriminatory reasons for the respondent’s action, but also credible evidence indicating that the reasons advanced were the real reasons for the action and not merely a pretext for discriminatory conduct." School Comm. of Braintree v. Massachusetts Commission Against Discrimination, 377 Mass. 424, 430 (1979). “If the defendant fails to meet its burden . . . then the presumption created by the preponderance of the evidence supporting prima facie case entitles [the] plaintiff to judgment.” Blare, 419 Mass. at 442. However, if the defendant satisfies its burden of production by offering a legitimate nondiscriminatory reason for its action, the plaintiff, at stage three, must then show “that the reason given by the employer is merely a pretext for discrimination.” Labonte, 424 Mass. at 821. “The plaintiff bears the burden of persuasion on the ultimate issue of discrimination.” Blare, 419 Mass. at 445.
b.Prima Facie Case of Discrimination
The defendant argues that Beling’s prima facie case is deficient because she performed unsatisfactorily throughout her employment at RMD, pointing to affidavits of Paster and Sia Afshari, a product manager for RMD. In response, the plaintiff has submitted evidence that, viewed most favorably to her, creates a material issue of fact as to whether she performed the essential functions of her position.[2]
The defendant further contends that, in order to establish a prima facie case of handicap discrimination under c. 151B, the plaintiff must show that she was fired solely because of her handicap, citing Labonte, 424 Mass. at 821, and that the plaintiff has no evidence to support this requirement. The Supreme Judicial Court, in Dartt v. Browning-Ferris Indus., Inc., 427 Mass. 1, 7 (1998), rejected Labonte in this respect, ruling that a plaintiff alleging handicap discrimination under c. 151B, §4(16) “need not establish as part of [her] prima facie case that [she] was terminated . . . ‘solely’ because of [her] handicap.” Accordingly, plaintiffs claim survives summary judgment at stage one.
c.Pretext
RMD contends that Beling’s claim nevertheless fails at stage three. RMD argues that it has articulated a legitimate nondiscriminatory reason for Beling’s termination (i.e., poor work performance), and that the plaintiff cannot satisfy her burden of showing pretext because the only evidence that she points to is the proximity in time between the date she notified RMD of her MS and the date she was fired. RMD argues that this evidence alone cannot defeat its motion for summary judgment, because RMD decided to terminate Beling (and began a search for her replacement) before learning of her MS.
Beling argues that, in addition to the proximity in time between RMD’s learning of her MS and her termination, there were numerous actions taken by RMD that raise an issue as to whether RMD’s nondiscriminatory reason for firing her is pretextual. Beling asserts that these actions are inconsistent with RMD’s position that it decided to fire Beling for poor work performance prior to learning of her MS.[3] Upon review, the Court concludes that the inconsistencies *544 identified by plaintiff do create material issues of fact as to RMD’s intent.
“Summary judgment is a disfavored remedy in the context of discrimination cases based on disparate treatment [] because the ultimate issue of discriminatory intent is a factual question[.]” Blare, 419 Mass. at 439 (citations omitted). The plaintiff has satisfied her summary judgment burden of presenting evidence that creates a material issue of fact as to RMD’s motive. “The ultimate issue of discrimination, raised by the plaintiffs and defendants’ conflicting evidence as to the defendants’ motive, is not for the court to decide on the basis of affidavits, but is for the fact finder after weighing the circumstantial evidence and assessing the credibility of the witnesses.” Id., at 445.
Accordingly, for the above-stated reasons, RMD’s motion for summary judgment is denied as to Count I to the extent that Count I alleges that RMD violated c. 151B by terminating Beling upon learning of her disability.
d. Reasonable Accommodation
RMD argues that summary judgment should be allowed with regard to Count I to the extent that Count I alleges a claim for failure reasonably to accommodate Beling’s MS. RMD contends that Beling failed to raise this claim in her Massachusetts Commission against Discrimination (“MCAD”) complaint, and therefore did not comply with c. 15IB’s filing requirements. In the alternative, RMD asserts that Beling’s reasonable accommodation claim fails on the merits as a matter of law. The plaintiff argues that RMD failed to explore a reasonable accommodation with Beling after learning of her MS, and after she requested a transfer.
While it is questionable whether Beling satisfied c. 151B’s filing requirements in these circumstances,[4] the Court need not address this issue because Beling’s reasonable accommodation claim fails on undisputed facts. While the parties contest whether Beling could perform the essential functions of the position, it is undisputed that Beling’s MS did not prevent her from performing the essential functions of her job. (See Defendants’ Statement of Undisputed Facts & Plaintiffs Response, para. 21.)
RMD is not subject to c. 15IB liability for failing to accommodate Beling’s MS if her MS is not the reason for her inability to perform the essential functions of her job. See G.L.c. 151B, §§1(16), 4(16) (requiring a plaintiff to show, as part of his or her prima facie case, that the plaintiff “would be capable of performing the essential functions of a particular job with reasonable accommodation to his [or her] handicap”) (emphasis added). Because it is undisputed that Beling’s MS did not prevent her from performing the essential functions of her job, whether RMD should have explored or provided a reasonable accommodation is irrelevant. Accordingly, summary judgment is allowed on Count I to the extent that it alleges violations of c. 151B for failure to explore or provide a reasonable accommodation.
2. Breach of Contract
In Count II, Beling alleges that RMD breached a contract with her by not complying with a policy stated within RMD’s personnel manual, which declares that RMD will not discriminate against its employees on the basis of disability. RMD argues that it is entitled to summary judgment on this claim because: (1) the employee manual did not create a contract; and (2) chapter 15IB provides the exclusive remedy for discrimination claims.
With regard to c. 151B’s exclusivity provisions, the Supreme Judicial Court has determined that “where applicable, G.L.c. 151B provides the exclusive remedy for employment discrimination not based on preexisting tort law or constitutional protections ...” Charland v. Muzi Motors, Inc., 417 Mass. 580, 586 (1994). In Green v. Wyman-Gordon Co., 422 Mass. 551 (1996), the court decided that, “[ijnsofar as the plaintiffs common law claims are merely recast versions of her . . . claims under c. 151B, they are barred by that statute’s exclusivity provision.” Id. at 558 (citations omitted). Similarly, in this case, the plaintiffs claim for breach of contract is “merely a recast version! ]” of her claim of handicap discrimination under c. 151B, §4(16). Id. Accordingly, based on the principles articulated in Charland and Green, Beling’s breach of contract claim (Count II) fails as a matter of law. Because summary judgment is granted on Count n based on chapter 151B’s exclusivity provisions, the Court need not address whether the personnel manual created a contract.
3. Infliction of Emotional Distress
In Count III, Beling alleges that defendants RMD and Paster are hable for intentional and negligent infliction of emotional distress because of the nature of her termination interview. The defendants argue that these claims fail because they are barred by the exclusivity provisions of the Massachusetts workers’ compensation act.
a. RMD
General Laws c. 152, §24 provides, in relevant part, that ”[a]n employee shall be held to have waived [her] right of action at common law ... in respect to an injury that is compensable under this chapter, to recover damages for personal injuries . . .” Common law actions against employers are barred by the exclusivity provisions of this act when “(1) the plaintiff is shown to be an employee; (2) her condition is shown to be a ‘personal injury’ within the meaning of the worker’s compensation act; and (3) the injury is shown to have arisen out of and in the course of her employment.” Brown v. Nutter, McClennen & Fish, 45 Mass.App.Ct. 212, 215 (1998); see also Foley v. Polaroid Corp., 381 Mass. 545, 548-49 (1980) (Foley I) (quoting G.L.c. 152, §26).
*545 All three of these criteria are met as to Beling’s claims for intentional and negligent infliction of emotional distress against RMD. First, it is undisputed that Beling was an employee of RMD. Second, her condition is a “personal injury” within the meaning of the workers’ compensation act. See Green, 422 Mass. at 560-61 (claims for negligent infliction of emotional distress barred by the exclusivity provisions of G.L.c. 152 whether they are the result of a bona fide personnel action or not); Foley, 381 Mass. at 550 (claims for intentional infliction of emotional distress covered by the workers’ compensation act); G.L.c. 152, §1(7A). Third, while it is disputed whether Paster told Beling that she had “lost it,” it is undisputed that this alleged event (which underlies Beling’s claim) occurred on a workday at RMD during Beling’s termination meeting. Beling’s injury, therefore, arose out of and in the course of her employment. See Doe v. Purity Supreme, Inc., 422 Mass. 563, 566 (1996) (“ ‘An injury arises out of employment if it arises out of the nature, conditions, obligations or incidents of employment. . .”) (quoting Caswell’s Case, 305 Mass. 500, 502 (1940). Accordingly, Beling’s claims for intentional and negligent infliction of emotional distress against RMD fail as a matter of law.
b. Paster
The workers’ compensation act “also provides the exclusive remedy against co-employees who engage in tortious conduct within the course of their employment and in furtherance of the employer’s interest.” Brown, 45 Mass.App.Ct. at 216 (citations omitted). However, co-employees themselves “are not immunized from suit by the workers’ compensation act for tortious acts, which are unrelated to the interest of the employer.” Id. (citations omitted).
In the present case, it is undisputed that the purpose of the meeting in which Paster allegedly told Beling she had “lost it” was to terminate Beling from RMD. It is self evident that this alleged conduct was not for Paster’s own personal benefit, but was related to his position as Beling’s supervisor, and furthered RMD’s interest. See Anzalone v. Massachusetts Bay Transp. Auth, 403 Mass. 119, 125 (1988) (determining that the complained-of conduct “related wholly to the [co-employee supervisor’s] position as the [plaintiffs] supervisor and to the manner in which [he] exercised his supervisory duties”). Accordingly, Beling’s claims for intentional and negligent infliction of emotional distress against Paster fail as a matter of law.[5]
ORDER
For the foregoing reasons, the defendants’ motion for summary judgment is DENIED with regard to Count I to the extent that Count I alleges handicap discrimination on the basis of defendant RMD’s terminating plaintiff upon learning of her disability. The defendants’ motion for summary judgment is ALLOWED with regard to count I to the extent that Count I alleges handicap discrimination or failure to explore or provide a reasonable accommodation; and is ALLOWED as to Counts II and III.

 Beling has submitted the following evidence: (1) Beling’s affidavit, which sets forth that (a) she performed her duties diligently, and competently, until 1993, when RMD greatly increased the volume of her work and told B eling that another secretary would be hired to assist with the additional work (Beling Aff., paras. 10, 21-3, 25), and (b) after Paster gave Beling a warning about her work performance, she took measures to improve, and, based on an interaction with Paster, she believed that her work performance was no longer an issue (id. at 26-7); (2) two exhibits showing that Beling received annual raises in 1991 and 1992 (Plaintiffs Exs. C & D; Beling Dep., Plaintiffs Ex. F, at 98); and (3) a letter of reference, signed by Paster shortly after he informed Beling of her termination, stating that “[Beling] demonstrated competence in general computer applications, staff assignments, and special products. Ms. Beling will undoubtedly make a good contribution in a secretarial/administrative position.” (Plaintiffs Ex. E; Paster Dep., Plaintiffs Ex. H, at 140.)

 Beling points to the following inconsistencies in the summary judgment record: (1) RMD asserts that Beling’s job performance was poor, but gave her significant raises each year; (2) RMD asserts that Beling was fired for poor work performance, but gave her a positive letter of reference upon her termination; and (3) RMD asserts that it began looking for a replacement for Beling prior to learning of her MS, but advertised for a secretary in a different department than the one in which Beling worked.

 An action cannot be brought in the Superior Court under G.L.c. 151B, §4 unless the plaintiff has initially filed a complaint with the MCAD within six months of the occurrence of the discriminatory event. See G.L.c. 151B, §5. The action “is confined to the content of the charge filed with the MCAD and claims within the scope of an MCAD investigation based on this claim." LaRosa v. United Parcel Service, Inc., 23 F.Supp.2d 136, 151 (D. Mass. 1998) (citing Lattimore v. Polaroid Corp., 99 F.3d 456, 464 (1st Cir. 1996)).
Beling filed a charge of discrimination with the MCAD on or about December 27, 1994. In response, RMD filed a Statement of Position, to which Beling filed a rebuttal with an attached affidavit. The only reference in Beling’s MCAD pleadings to her transfer request is in paragraph 15 of the affidavit attached to her rebuttal.
RMD argues that Beling cannot bring a reasonable accommodation claim here because she failed to raise this claim in her MCAD charge. According to RMD, Beling’s single reference to her transfer request failed to provide RMD with notice of Beling’s accommodation claim. RMD further contends that the MCAD’s decision not to investigate a reasonable accommodation claim shows that this claim was not within the scope of Beling’s MCAD charge.
Beling's reference in her MCAD pleadings to her request for a transfer may be enough to satisfy the MCAD fifing requirements. See LaRosa, 23 F.Supp.2d at 151 (employee’s accommodation claim was reasonably within the scope of the MCAD’s investigation where, in an attachment to his complaint, the employee stated that he had been restricted to modified light duty and that the employer tried to force him to do heavy duty work); Stephenson v. State Street Bank & Trust Co., 924 F.Supp. 1258, 1276 (D. Mass. 1996) (whether plaintiff satisfied the fifing requirements depends not upon what the MCAD chose to investigate, but rather upon what the MCAD was given the opportunity to investigate).

 Befing’s reliance on Brum v. McClennon & Fish, supra, 45 Mass.App.Ct. 212 does not save her claim. The court in that case held that a Superior Court judge erred by allowing a defendant co-employee’s motion to dismiss the plaintiffs *546 claim of intentional infliction of emotional distress. Id., at 218. The plaintiff, a legal secretary, worked with the individual defendant, an attorney at the defendant law firm. Id. at 213. The plaintiff alleged that the attorney compelled her to falsify documents for his own personal gain.
The court reasoned that it was not self-evident that the defendant’s alleged conduct was job-related or furthered the law firm’s interest. Id. at 218. Additionally, the court stated,
”[a]t this early stage of the proceeding, it is premature to say that [the plaintiff], after conducting discovery, will be unable to prove any set of facts demonstrating that [the attorney] was acting neither within the scope of his employment nor in the furtherance of his employer’s interest.”
Id. (citation omitted). Unlike Brown, this case involves a motion for summary judgment (after discovery has been conducted), and on the summary judgment record it is beyond dispute that Paster was acting within the scope of his employment and in furtherance of RMD’s interest when he terminated Beling.