# United States Court of Appeals
## For the First Circuit

No. 11-1430

ANTHONY McCARTY,

Plaintiff,

v.

VERIZON NEW ENGLAND, INC.; JEFFREY ROMANO,

Defendants, Appellees.

_____

JAMES N. ELLIS,

Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Richard G. Stearns, U.S. District Judge]

Before
Torruella, Circuit Judge,
Souter,* Associate Justice,
and Boudin, Circuit Judge.

Israel M. Sanchez for appellant James N. Ellis.
Arthur G. Telegen with whom Michael D. Fleischer and Seyfarth Shaw LLP were on brief for appellees.

March 23, 2012

*The Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

**BOUDIN, <u>Circuit Judge</u>**.  Attorney James N. Ellis appeals from a sanction order against him that was entered by the district court in the underlying civil suit in which Ellis was the plaintiff's counsel.  <u>McCarty</u> v. <u>Verizon New England, Inc.</u>, 772 F. Supp. 2d 362, 365-66 (D. Mass. 2011).  The sanction was an award of attorneys' fees to the defendants--Verizon New England, Inc. and Jeffrey Romano--in the amount of $34,908.12.  <u>Id.</u> at 367.  The events and course of proceedings are as follows.

On May 23, 2006, Verizon employee Anthony McCarty crashed a Verizon truck into a highway abutment while driving to his first job of the day for Verizon.  McCarty was injured and taken to the emergency room at St. Vincent's Hospital in Worcester, Massachusetts.  McCarty eventually admitted to snorting heroin earlier in the morning; a urine sample taken at the hospital tested positive for opiate use.

McCarty and his supervisor, Jeffrey Romano, both agree that McCarty called Romano on May 24, 2006, to say that he would not be coming into work because of the accident; and McCarty remained absent from work for the following week.  Romano says that he made numerous but unsuccessful attempts to reach McCarty during the week.  On June 1, Romano drove to McCarty's parents' house, where McCarty was then living, seeking to have McCarty fill out Verizon paperwork related to the accident.

Romano claims this was an arranged meeting; McCarty, that Romano was uninvited and unwelcome. Either way, the encounter became hostile: assuming McCarty's version of events, Romano was asked to leave by McCarty's father and became argumentative. McCarty claims that Romano attempted to block the door with his boot when McCarty's father sought to close it. Romano allegedly remained on the property, circling the house and yelling, until the police called by McCarty's father ordered him to leave.

Verizon terminated McCarty's employment on August 30, 2006, citing McCarty's operation of a Verizon truck while under the influence of drugs. McCarty filed a Massachusetts workers' compensation claim under the Massachusetts Workers' Compensation Act ("Compensation Act"), Mass. Gen. L. ch. 152; he sought compensation for the injuries he suffered in the May 23 accident itself and also for alleged psychological harm based on two different causes: (1) alleged on-the-job harassment by Romano before the accident and (2) the June 1 visit by Romano to the house.

The administrative law judge ("ALJ") denied the claim for harm suffered in the accident, finding that the accident was caused by McCarty's drug use, an example of serious, willful misconduct. The ALJ also found that the alleged pre-accident harassment claim failed because Romano was not engaged in harassment but was acting

-3-

as a diligent supervisor by following up on McCarty as a consistently poor worker.

As for the June 1 visit, the ALJ accepted McCarty's version of what had occurred and deemed Romano's conduct a "potentially compensable incident." But the ALJ found that McCarty had failed to prove injury to himself or the causation of any resulting disability, so no compensation was awarded. McCarty then appealed from this determination, arguing that the June 1 incident should not have been considered at all and that the finding should be deleted.

McCarty's administrative appeal was rejected by the review board in November 2008, and then in October 2009 by the Massachusetts Appeals Court, which held that "the June 1, 2006, incident . . . was part and parcel with the overall tenor of the employee's psychiatric claim based on supervisor harassment." McCarty's Case, 2009 WL 3245454 at *1 (Mass. App. Ct. Oct. 13, 2009). It noted too that "there was no abuse of discretion in the joinder of this [June 1] incident as part of the psychiatric claim." Id.

On May 5, 2009, while his appeal of the first ALJ determination and review board affirmance was pending at the Massachusetts Appeals Court, McCarty filed a second workers' compensation claim pertaining solely to the June 1 incident at his parents' home. This claim was rejected by the ALJ as res judicata

-4-

on March 5, 2010.  The ALJ's decision was affirmed by the review board which in turn was recently upheld by the Massachusetts Appeals Court, McCarty's Case, 2012 WL 468172 (Mass. App. Ct. Feb. 15, 2012), with a state court award of double costs against McCarty "as the appeal [was] frivolous."  Id. at *2.

On May 13, 2009, roughly a week after the second workers' compensation claim was filed, McCarty filed suit against Verizon and Romano in state court, charging Romano with intentional infliction of emotional distress, negligent infliction of emotional distress, and trespass; the complaint also alleged respondeat superior liability for Verizon.  Verizon and Romano removed the suit to federal court and asserted that the claims were preempted by Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a) (2006), and barred by the exclusivity provision of the Compensation Act, Mass. Gen. L. ch. 152, § 24.

The removal and the assertion of federal preemption rested upon the connection between McCarty's claims and the collective bargaining agreement governing the employment relationship between Verizon and McCarty.  Allis-Chalmers Corp. v. Lueck, 471 U.S. 202 (1985); O'Donnell v. Boggs, 611 F.3d 50, 53 (1st Cir. 2010).  As O'Donnell illustrates, state tort claims against an employer for work-related harm, including emotional distress, are frequently preempted because of the applicable CBA's grievance provisions and the need to interpret CBA provisions, such

as a management's rights clause, in resolving the dispute.  Id. at 55-56.

The alternative defense of exclusivity was based upon a provision in the Compensation Act.  The statute covers "personal injury arising out of and in the course of . . . employment." Mass. Gen. L. ch. 152 § 26.  The exclusivity provision provides that

> [a]n employee shall be held to have waived his right of action at common law . . . in respect to an injury that is compensable under this chapter, to recover damages for personal injuries if he shall not have given his employer, at the time of his contract of hire, written notice that he claimed such right.

Id. § 24.

The exclusivity provision bars claims outside of the Compensation Act against employers "where (1) the plaintiff is shown to be an employee; (2) [plaintiff's] condition is shown to be a personal injury within the meaning of the [Compensation Act]; and (3) the injury is shown to have arisen out of and in the course of [plaintiff's] employment."  Brown v. Nutter, McClennen & Fish, 696 N.E.2d 953, 955 (Mass. App. Ct. 1998).  The exclusivity bar includes negligence and emotional distress claims, Doe v. Purity Supreme, Inc., 664 N.E.2d 815, 818-19 (Mass. 1996); Green v. Wyman-Gordon Co., 664 N.E.2d 808, 813-15 (Mass. 1996), and claims against co-workers, Gibney v. Dykes, 2008 WL 2677143 at *1 (Mass. App. Ct. July 10, 2008).

-6-

After removal, the district judge at an early scheduling conference on December 21, 2009, expressed "serious reservations about whether this case should have been brought at all." McCarty v. Verizon New England, Inc., 731 F. Supp. 2d 123, 134 (D. Mass. 2010). McCarty did not withdraw his suit but, in August 2010, it was ultimately dismissed by the district court on summary judgment based on both federal LMRA preemption and the state exclusivity provision. Id. at 130-33.

In dismissing, the district court ruled that sanctions might be warranted, and it ordered McCarty's several lawyers to show cause why they should not be sanctioned for filing a frivolous case. McCarty, 731 F. Supp. 2d at 134-35. In response, Ellis claimed sole responsibility for managing the case; he argued that since the second workers' compensation claim was still on appeal, the state court might find that the June 1 incident fell outside the scope of the Compensation Act, and that Ellis' filing of the tort suit was therefore necessary to protect his client's rights.

In its sanctions decision issued on March 25, 2011, McCarty, 772 F. Supp. 2d 362, the district court accepted Ellis' claim of sole responsibility but concluded that "no reasonable attorney--particularly one with Ellis's experience with Workers' Compensation Act claims--would have failed to recognize the exclusivity provision as an absolute bar." Id. at 366. The district court then reduced Verizon's requested award of attorneys'

fees to $34,908.12 to reflect only the fees incurred after the district court's December 2009 warning about the lawsuit's viability; the sum was awarded against Ellis personally. Id. at 367.

Ellis now appeals the award of sanctions against him. McCarty, represented by new counsel, has voluntarily withdrawn his appeal of the summary judgment decision. We review sanctions ordered under Federal Rule of Civil Procedure 11 for "abuse of discretion." Obert v. Republic W. Ins. Co., 398 F.3d 138, 143 (1st Cir. 2005). Indisputably, a frivolous lawsuit may be subject to sanctions, including an award to the other side of attorneys' fees, Fed. R. Civ. P. 11(c). Pertinently, Rule 11(b) provides:

> By presenting to the court a pleading, written motion, or other paper . . . an attorney . . . certifies that to the best of [her] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . [that] the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law . . . .

On this appeal, Ellis concedes that he was McCarty's lead attorney both in the workers' compensation proceedings and in the district court. His central position appears to be this:

> -that Romano's alleged harassment of McCarty during the June 1 visit was a distinct harm independent of the physical and other medical claims due to the accident itself and the alleged harassment prior to the accident;

-that the June 1 harassment could be viewed as independent or arising outside of the scope of employment and therefore non-compensable under the Compensation Act; and

-that even though the first ALJ had found against McCarty as to such harassment, the appeals from that decision and the pursuit of a second workers' compensation claim required a protective tort law suit because of the impending statute of limitations.

The main difficulty for Ellis is that the original workers' compensation claim litigated for McCarty encompassed psychological harm stemming from the June 1 incident;[1] a necessary premise of including it was that Romano's visit had been job-related (Romano had confirmed that he was seeking to complete the accident report for Verizon); and the claim had failed not for any doubt of Verizon's responsibility for Romano's visit but because the ALJ (having held two hearings) found insufficient proof of harm to McCarty caused by the visit.

Nothing suggests that the premise--that the visit was work related--was either mistaken or had any chance of being overturned on state court review of the ALJ's initial decision, let alone by a collateral attack by a second independent workers'

---

[1]Regardless of whether the initial claim as filed included the specific trespass incident, the ALJ included it in the original decision, and as noted above, the state appeals court concluded that liability for the incident was tried with McCarty's consent. McCarty's Case, 2009 WL 3245454 at *1.

compensation claim or by a third effort through a tort suit.[2] McCarty in his tort suit expressly alleged that Romano was acting in the course of his employment during the visit--this being a condition for respondeat superior liability against Verizon.  Lev v. Beverly Enters.-Mass., Inc., 929 N.E.2d 303, 308 (Mass. 2010).

Given that premise, Ellis has never coherently explained how he had any chance of overcoming the exclusivity provision of the Compensation Act.  As Ellis concedes on appeal, the ALJ's "decision in the first claim can be easily interpreted that [sic] the psychiatric claim resulting from Romano's trespass conduct was compensable [under the Compensation Act]" and that McCarty merely failed to provide "sufficient evidence to support causality." Indeed, on summary judgment, McCarty argued again that "Romano's actions were clearly motivated at least in part to serve Verizon."

There is a hint in Ellis' brief, never seriously developed, that Romano's aggressive conduct somehow prevented the visit from being work related and precluded compensation, thus avoiding the exclusivity provision.  But the ALJ's ruling was to the contrary and anyway the law is well settled that improper as well as decorous conduct by a fellow employee or supervisor can

---

[2]Further, while the state court appeal of the original ALJ decision was not decided until October 2009, after the tort suit was initiated in May 2009, Ellis continued the tort suit after the appeals court decision and after the district judge expressed skepticism in December 2009.

give rise to workers' compensation claims.[3]  The primary case that Ellis offers in support of his argument relates to the treatment of conduct occurring after an employment relationship has ended. Larocque's Case, 582 N.E.2d 959, 960 (Mass. App. Ct. 1991).

McCarty's tort suit was not only hopeless but aggravated by two further factors.  One was that two workers' compensation claims had already been filed by Ellis--the second being itself virtually hopeless--making the tort suit what the district judge called "an indigestible third bite at the apple," McCarty, 731 F. Supp. 2d at 134; the other was the district court's explicit warning to counsel which was then ignored even after the state appeal had failed.  See note 2, above.

Ellis says that McCarty responded to the district court's warning by making an offer of proof and then heard nothing more about the district court's doubts.  But the district court, having made clear its misgivings, had no duty to provide a second warning. And the offer of proof was concerned with facts; it did not address the obvious legal problems with the suit.  Persistence on the part

---

[3]Purity Supreme, 664 N.E.2d at 818 ("[I]ntentional torts are covered by the [Compensation Act], even when they are committed by coemployees."); Anzalone v. Mass. Bay Transp. Auth., 526 N.E.2d 246, 249 (Mass. 1988)(same); Gibney, 2008 WL 2677143 at *1 ("A claim against a fellow worker for the commission of an intentional tort will be barred by the exclusivity clause . . . if committed within the course of the worker's employment and in furtherance of the employer's interest.").

of counsel is often an admirable virtue; but in this instance it was overdone.

<u>Affirmed</u>.