ROBERT A. ANZALONE & others[1] vs. MASSACHUSETTS BAY
TRANSPORTATION AUTHORITY & another[2].

Suffolk.  April 5, 1988. — August 1, 1988.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, NOLAN, & LYNCH, JJ.

*Consumer Protection Act*, Availability of remedy, Employment, Insurance.
*Workmen's Compensation Act*, Self-insurer, Common employment,
Emotional distress, Injuries to which act applies. *Unlawful Interference.*
*Emotional Distress.*

In a civil action the judge properly dismissed the plaintiff's claims against
his employer based on G. L. c. 93A, where the allegations of the
complaint stated only a dispute arising out of an employment relationship
and not out of the conduct of any trade or commerce. [121-122]
In a civil action the judge properly dismissed the plaintiff's claim against
his fellow employee for interference with contractual relations, the plain-
tiff's employment, where there was no allegation in the complaint that
the plaintiff suffered any actual damages or loss. [122-123]
In a civil action the judge properly dismissed the plaintiff's claim against
his fellow employee for intentional infliction of emotional distress where
the conduct complained of occurred within the course of the parties'
employment and thus the claim was barred by the provisions of the
Workmen's Compensation Act. [123-125]

CIVIL ACTION commenced in the Superior Court Department
on December 26, 1985.

The case was heard by *Herbert Abrams, J.,* on a motion to
dismiss.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

---

[1] Diane Anzalone (wife), Robert L. Anzalone (son), Sandra J. Anzalone
(daughter), Dawn M. Anzalone (daughter), and Michael J. Odierno (step-
son).

[2] John O'Loughlin, a lieutenant with the police force of the Massachusetts
Bay Transportation Authority.

*Frederick T. Golder* for the plaintiffs.

*David D. Patterson* ( *Jonathan P. Feltner* with him) for the defendants.

LIACOS, J. Robert Anzalone, a police officer employed by the Massachusetts Bay Transportation Authority (MBTA), filed suit against the MBTA. Count 1, brought by Anzalone under G. L. c. 93A (1986 ed.), alleged that the MBTA engaged in unfair or deceptive acts in the handling of his workmen's compensation claim. Anzalone's wife and children were plaintiffs in the remaining five counts, also brought under G. L. c. 93A. These five counts state claims for loss of consortium by Anzalone's wife and children "as a result of the unfair and deceptive trade practices committed against" Anzalone. The plaintiffs later amended their complaint, adding a count against John O'Loughlin, Anzalone's supervisor, for intentionally harassing Anzalone and interfering with his employment.[3] The MBTA and O'Loughlin filed a motion to dismiss the complaint for failure to state a claim on which relief could be granted. Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974). The defendants' motion was allowed, and the plaintiffs appeal. We transferred this case on our own motion and affirm the dismissal of the complaint as to the MBTA and O'Loughlin.

We deal first with the plaintiffs' claims against the MBTA. The plaintiffs' complaint alleges that, in 1968, Anzalone began his employment with the MBTA as a police officer. On November 9, 1979, while acting in the line of duty, Anzalone rescued a person from a dangerous place and, in so doing, inhaled a substantial amount of smoke. As a result, Anzalone was disabled and did not return to work until November 3, 1983, when the MBTA ordered Anzalone to return to work for light duty, or be terminated.

On the day Anzalone returned to work, he suffered an anxiety attack which caused him to be disabled from November 3, 1983, to April 20, 1984. Anzalone returned to work on April 20, 1984, and on June 6, 1984, was ordered to work in a room

---

[3] The complaint was amended a third time in a manner not pertinent to this appeal.

with no ventilation and a temperature of 105 degrees. He again was disabled until June 8, 1984, at which time he returned to work. From June 19, 1984, until June 26, 1984, Anzalone was hospitalized for a cardiac catheterization. Thereafter, he returned to work until December 12, 1984, at which time he sustained a personal injury "which caused him to become totally disabled."

Anzalone filed for workmen's compensation payments pursuant to G. L. c. 152 (1986 ed.) (Workmen's Compensation Act), which the MBTA refused to pay. During the course of compensation proceedings before the Industrial Accident Board, the MBTA sent Anzalone to a number of physicians for examinations and evaluations. The MBTA has refused to supply Anzalone with copies of the medical reports.[4]

A. *Claim against employer.* Anzalone contends that he has alleged sufficient facts to state a claim under G. L. c. 93A and that the judge erroneously dismissed the complaint. In reviewing the dismissal of a complaint pursuant to Mass. R. Civ. P. 12 (b) (6), we take the facts alleged in the complaint to be true, and consider whether those allegations reveal that there is no set of facts which, if proven, would entitle the complainant to relief. *Santana* v. *Registrars of Voters of Worcester,* 384 Mass. 487, 491 (1981). *Nader* v. *Citron,* 372 Mass. 96, 98 (1977).

In *Manning* v. *Zuckerman,* 388 Mass. 8 (1983), we held that the Legislature did not intend to grant the protection of c. 93A to a former employee against his former employer in a dispute arising out of the employment relationship. *Id.* at 12. Anzalone asserts that *Manning* is inapposite because it was decided pursuant to G. L. c. 93A, § 11, and Anzalone's action is brought under G. L. c. 93A, § 9. In *Manning* we discussed the operative portion of G. L. c. 93A, § 2 (*a*), which makes unlawful "[u]nfair methods of competition and unfair or decep-

---

[4] The status of the compensation claim before the Industrial Accident Board is not before us. We note, however, that Anzalone's right to obtain copies of medical reports is adequately provided for by G. L. c. 152. See, e.g., G. L. c. 152, §§ 20, 20A, and 30A.

tive acts or practices in the conduct of any trade or commerce . . . ."[5] We stated that "we believe that the Legislature did not intend [c. 93A] to cover employment contract disputes between employers and the employees who work in the employer's organization, nor . . . disputes between members of that organization arising out of the employment relationship." *Id.* Nothing stated in the complaint makes this case anything other than a dispute arising out of an employment relationship.

Anzalone argues, however, that this is not an employment dispute, but rather a dispute between him and an insurer. According to Anzalone, at the time the MBTA, a self-insurer under G. L. c. 152, committed the alleged unlawful trade practices, it was acting as an insurance company, not as Anzalone's employer, and thus violated G. L. c. 176D (1986 ed.).[6] Even if we assume the truth of Anzalone's allegations, G. L. c. 176D does not apply to the MBTA. General Laws c. 176D, § 1 (*a*), states that it applies to any self-insurer "which is engaged in the business of insurance." A self-insuring employer under the workmen's compensation law does not become an insurance company. See *Bertrand* v. *Quincy Mkt. Cold Storage & Warehouse Co.*, 728 F.2d 568, 571 (1st Cir. 1984). The judge correctly dismissed Anzalone's count against the MBTA and the loss of consortium claims, all of which are based on alleged violations of G. L. c. 93A.

B. *Claim against co-employee.* In his count against O'Loughlin, Anzalone alleged that, when he returned to work, O'Loughlin ordered him to be in full uniform but not to carry a gun. The plaintiff alleged that O'Loughlin criticized Anzalone's performance, ordered him to wash an automobile, in violation of the terms of light duty work, ordered Anzalone to

_____

[5] "Trade" and "commerce" are defined in G. L. c. 93A, § 1 (*b*), as: "'Trade' and 'commerce' shall include the advertising, the offering for sale, rent or lease, the sale, rent, lease or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situate, and shall include any trade or commerce directly or indirectly affecting the people of this commonwealth."

[6] A violation of G. L. c. 176D, § 3 (9), is deemed, by virtue of G. L. c. 93A, § 9 (1), to give rise to a c. 93A claim.

perform dirty and menial jobs, and, when he had appointments with his physicians, required Anzalone to bring a note stating the time he arrived at his appointment, the time he left, and what was done. Anzalone further alleged that O'Loughlin, in order to exacerbate Anzalone's physical condition, sent people smoking cigarettes into the office in which Anzalone was working, had people paint outside Anzalone's office, and placed Anzalone in a room with no ventilation and temperatures in excess of 100 degrees. At the end of his complaint, Anzalone concludes that O'Loughlin "intentionally and maliciously interfered with . . . Anzalone's employment with the M.B.T.A."

The defendants contend that the judge properly dismissed the complaint against O'Loughlin because the complaint failed to set forth a claim of interference with contractual relations. The elements of the tort of interference with contractual relations were set out in *Walker* v. *Cronin,* 107 Mass. 555, 562 (1871): "(1) intentional and wilful acts (2) calculated to cause damage to the plaintiffs in their lawful business, (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendant, (which constitutes malice,) and (4) actual damage and loss resulting."

Anzalone's complaint does not allege that he was terminated, or that he separated from, or resigned from the MBTA. There is no allegation of any "loss of advantages, either of property or of personal benefit, which, but for [O'Loughlin's] interference, the plaintiff would have been able to attain or enjoy." *Walker* v. *Cronin, supra* at 565. Because Anzalone's complaint failed to allege any actual damages or loss, the judge properly dismissed the claim against O'Loughlin.

Anzalone argues, however, that his complaint alleges an intentional tort by O'Loughlin and that it was error for the judge to dismiss his claim against O'Loughlin because intentional torts are not subject to the exclusivity bar in the workmen's compensation law. This is so, he says, because O'Loughlin's conduct did not arise out of, and in the course of, O'Loughlin's employment. Assuming, under this argument, that the essence of Anzalone's claim is the intentional infliction of emotional distress, we consider, on the facts

alleged, whether an employee can bring such a common law claim against his employer.

General Laws c. 152, § 15, provides in part: "Nothing in this section, or in section eighteen or twenty-four shall be construed to bar an action at law for damages for personal injuries . . . by an employee against any person *other than* the insured person employing such employee . . . and said insured person's employees" (emphasis added). In previous cases, we have concluded that the Workmen's Compensation Act bars an employee injured in the course of his or her employment by the negligence of a fellow employee from recovering from that fellow employee if the fellow employee also was acting in the course of employment. *Mendes* v. *Tin Kee Ng,* 400 Mass. 131 (1987). See *Saharceski* v. *Marcure,* 373 Mass. 304, 306 (1977). We also have held that an employee is not barred from bringing an action against a fellow employee who commits an intentional tort which "was in no way within the scope of employment furthering the interests of the employer." *O'Connell* v. *Chasdi,* 400 Mass. 686, 690 (1987). However, a suit for an intentional tort in the course of the employment relationship is barred by the exclusivity provision of the Workmen's Compensation Act, unless the employee has reserved a right of action pursuant to G. L. c. 152, § 24.[7] Anzalone does not assert that he reserved his right under § 24. *Foley* v. *Polaroid Corp.,* 381 Mass. 545, 550 (1980) (claim for intentional infliction of emotional distress covered by c. 152; tort claim barred). The question, then, is whether O'Loughlin's alleged actions occurred during the employment relationship; specifically, whether O'Loughlin's conduct was "within the

---

[7] Prior to the 1985 amendment, G. L. c. 152, § 24, provided in part: "An employee shall be held to have waived his right of action at common law or under the law of any other jurisdiction in respect to an injury therein occurring, to recover damages for personal injuries if he shall not have given his employer, at the time of his contract of hire, written notice that he claimed such right, or, if the contract of hire was made before the employer became an insured person or self-insurer, if the employee shall not have given the said notice within thirty days of the time said employer became an insured person or a self-insurer." The subsequent amendments to this statute do not affect this case.

scope of employment furthering the interests of the [MBTA]."
*O'Connell* v. *Chasdi, supra.*

O'Loughlin's complained-of conduct related wholly to his
position as Anzalone's supervisor and to the manner in which
O'Loughlin exercised his supervisory duties. The conduct com-
plained of arose in the course of employment by the MBTA
of Anzalone and O'Loughlin. Thus, these claims are covered
exclusively by c. 152. See *Albanese's Case,* 378 Mass. 14
(1979) (claim for emotional distress covered by G. L. c. 152);
*Fitzgibbons's Case,* 374 Mass. 633 (1978) (same). The judge
correctly dismissed Anzalone's count against O'Loughlin.[8]

*Judgment affirmed.*[9]

[8] We note that redress for Anzalone's claims against O'Loughlin is pro-
vided for in the Workmen's Compensation Act. Section 28 of G. L. c. 152
provides for double damages in cases of "serious and wilful misconduct"
by an employer, a fellow employee, or a supervisor.

[9] The complaint against O'Loughlin asserts no consortium claim as against
him. Thus, we do not reach the issue of exclusivity in this regard. Addition-
ally, although the plaintiff states that the motion to dismiss was "too late,"
he makes no argument on this point. Thus, we consider the claim waived.
Mass. R. A. P. 16, as amended through 386 Mass. 1247 (1982).