Sosman, J.
Plaintiff Lorraine Richards has brought the present action alleging sexual harassment, race and sex discrimination, and retaliation against her employer (Walter Fernald State School) and her supervisor (John Bruk). In her amended complaint, she added a claim for “aiding and abetting” (G.L.c. 15IB, §4(5)), a claim for violation of her civil rights (G.L.c. 12, §111), and common-law claims for intentional interference with contractual relations, intentional infliction of emotional distress, assault, and negligent hiring and supervision. Defendants have now moved for summary judgment on all claims against them. For the following reasons, defendant John Bruk’s motion is ALLOWED and defendant Fernald School’s motion is ALLOWED in part and DENIED in part.
Facts
Plaintiff, a mental retardation worker at the Walter Fernald State School, complains that her supervisor, defendant John Bruk, asked her to go out with him four times back in May 1992. She alleges that, when she rejected his requests for a date, Bruk responded by saying, “You’ll regret it.” Thereafter, she complains that Bruk denied her requests for time off. These refusals to grant her time off allegedly occurred in 1992.
On November 6, 1992, Richards and her attorney met with personnel officials at Fernald School to complain of Bruk’s alleged “discriminatory treatment every time [Richards] requested time-off from work.” At that meeting, she also complained that Bruk was “screaming” at her and that he was not letting her have the gloves she needed for her work with patients, both of which she also viewed as discriminatory. She alleges that, a month after that informal complaint, Bruk retaliated against her by falsely charging her with sleeping while on duty.[1]
Richards then alleges that, on June 16, 1993, Bruk came to the unit where she worked and asked her to sign a memo concerning her ability to lift patients or to get a doctor’s note concerning any medical restrictions on her work activities.[2] When plaintiff refused to sign the memo, Bruk said that she could not work the following night. Plaintiff still refused, at which point Bruk brought over the night shift officer. After the visit from that officer, plaintiff still refused to sign. Thereafter, plaintiff claims that Bruk returned to see her and said that he “would forget all about this if you go out with me.”
Richards then complains that, on the night of August 26, 1993, Bruk “screamed at her.” Richards again reported this incident to personnel officials. Richards later received a notice that Bruk had accused her of sleeping while on duty on October 25, 1993.[3] Richards finally complains that Bruk “shouted” at her on November 18, 1993.
Richards tiled her charge of discrimination with the MCAD on December 1, 1993. That charge named Walter Fernald State School as the sole respondent. The present action was filed on March 6, 1996.
Discussion
1. Failure to name Bruk in the MCAD complaint
Bruk contends that all discrimination claims against him are barred because Richards failed to name him in the MCAD charge. See Powers v. H.B. Smith Co., 42 Mass.App.Ct. 657, 667 (1997). Richards relies on federal precedent, which has allowed suits against individuals not named in the administrative *182 claim to go forward where the unnamed individual is closely connected with the named party, has the same interest as that named party, and has received adequate actual notice of the pending administrative proceedings. See Hayes v. Henri Bendel, Inc., 945 F.Sup. 374, 378 (D. Mass. 1996); McKinnon v. Kwong Wah Restaurant, 83 F.3d 498, 505 (1st Cir. 1996). See also Sobotka v. Westfield Savings Bank, 3 Mass. L. Rptr. 346 (April 17, 1994).
Here, Bruk was not in Fernald School’s upper level management. Nor were his interests necessarily allied with Fernald School on this claim. Rather, the sexual harassment claims Richards has made against Bruk would, if substantiated, likely lead to significant disciplinary action against him. On similar facts, this court (Fabricant, J.) granted summary judgment in favor of the lower-level (although technically still supervisory) employee who had not been individually named in an MCAD charge alleging sexual harassment. Albee v. New England Medical Center Hospitals, Inc., 7 Mass. L. Rptr. 593 (Oct. 30, 1997). Richards contends that Bruk was aware of the pending MCAD claim, but mere awareness that a claim has been filed does not suffice. Under Powers, Bruk is entitled to summary judgment in his favor on all G.L.c. 15 IB claims of employment discrimination, sexual harassment, retaliation and aiding and abetting.
2.Untimeliness of MCAD complaint against Fernald School
Plaintiffs’ complaints of discrimination with respect to the alleged incidents occurring in 1992 (the alleged requests for dates in May 1992, the alleged refusals to permit time off later on in 1992, any alleged incidents of screaming or refusal to provide gloves in 1992, and Bruk’s alleged retaliatory charge of sleeping while on duty in December 1992) are all time-barred, as no administrative complaint was filed with the MCAD within the required six months.[4]
Plaintiff cannot resurrect her claims from 1992 by reference to the alleged incidents in the summer of 1993. A theory of “continuing violation” cannot be supported on these facts. “Even where a plaintiff alleges a violation within the appropriate statute of limitations period, the continuing violation claim will fail if the plaintiff was or should have been aware that he was being unlawfully discriminated against while the earlier acts, now untimely, were taking place.” Provencher v. CVS Pharmacy Division of Melville Corp., 145 F.3d 5, 14 (1st Cir. 1998). Here, plaintiff and her attorney met with personnel officials at Fernald School in November 1992 and complained that Bruk was discriminating against her. Where plaintiff was fully aware of the alleged discrimination back in November of 1992, the time period for her to file her administrative claim was by then already running, and alleged further acts of discrimination in June 1993 and thereafter do not revive those claims from 1992.[5]
Thus, Richards’ December 1, 1993 MCAD filing is timely only as to those alleged incidents of discrimination that occurred from June 1993 on. Complaints concerning incidents prior to that date are now time-barred.
3.Sexual harassment claim from June 15, 1993
The only alleged incident of sexual harassment that post-dates June 1, 1993 is the encounter on June 15, 1993, during which Bruk allegedly told Richards that he would “forget all about” the problem of her not signing the work limitations memo if she would “go out” with'him. The term “sexual harassment” includes “sexual advances, requests for sexual favors, and other verbal conduct of a sexual nature” where “submission to or rejection of such advances, requests or conduct is made either explicitly or implicitly a term or condition of employment or as a basis for employment decisions.” G.L.c. 15 IB, §1(18). Viewed in the light most favorable to plaintiff, the alleged request to “go out” could be interpreted as a request for sexual favors, and the alleged offer to drop whatever concerns Bruk had about the disability memo could comprise the requisite threat to base at least one employment decision on her response to that request. As such, the alleged June 15, 1993 incident could qualify as quid pro quo sexual harassment.[6]
Where Bruk was Richards’ supervisor, the employer (Fernald School) is liable for any sexual harassment on his part, without regard to notice or to the other remedial actions taken by the employer. College-Town, Division of Interco, Inc. v. Massachusetts Commission Against Discrimination, 400 Mass. 156, 163-67 (1987). Fernald School argues that, because Bruk did not have the authority to hire or fire Richards, the principles of College-Town do not apply. Nowhere does College-Town suggest that the term “supervisor” includes only those supervisory employees who have the power to fire an employee. Having placed Bruk in at least some degree of supervisory authority over Richards, Fernald School is liable if Bruk himself engaged in sexual harassment of Richards.
4.Race and sex discrimination
Richards claims that Bruk’s conduct in screaming at her in August and November of 1993 constituted discrimination on the basis of race and sex. She also contends that Bruk’s October 1993 charge of sleeping while on duty was false and was made against her due to her race and sex. Fernald School’s summary judgment motion does not address race and sex discrimination claims stemming from these incidents, and the School has not set forth any basis for granting summary judgment on those claims. (The court also notes that the MCAD ultimately found probable cause with respect to these incidents.) Defendant is not entitled to summary judgment on plaintiffs’ race and sex discrimination claims stemming from these incidents from the summer and fall of 1993.
*183 5.Retaliation
Under G.L.c. 151B, §4(4), it is unlawful for an employer “to discharge, expel or otherwise discriminate against any person because he has opposed any practices forbidden under this chapter or because he has filed a complaint, testified or assisted in any proceeding under section 5.” Here, none of the conduct complained of occurred after Richards filed her MCAD complaint. There is no claim of retaliation for having filed that complaint.
The only arguable retaliation that occurred within six months prior to the filing of the MCAD complaint was that Bruk sought disciplinary action against Richards in October 1993, approximately two months after she had complained to other Fernald School officials about the August 1993 “screaming” incident. However, the charge brought by Bruk — sleeping while on duty — did not result in any adverse employment action against Richards. After hearing on Bruk’s charge, the Fernald School Superintendent found that there was “no just cause” for that charge. Thus, to the extent that Bruk’s October 1993 charge against Richards was in retaliation for her August 1993 internal complaint against him, the Fernald School did not support Bruk. On that allegedly retaliatory charge of sleeping while on duty, Fernald School agreed with Richards. The Superintendent did find that Richards had been “inattentive to [her] duties,” but plaintiff has no evidence connecting the Superintendent’s December 1993 decision (which rejected Bruk’s allegations and found only a much lesser infraction) to Richard’s having complained against Bruk back in August. As such, Fernald School is entitled to summary judgment on plaintiffs’ claims of retaliation.
6.Aiding and abetting
Under G.L.c. 15IB, §4(5), it is unlawful for “any person, whether an employer or an employee or not, to aid, abet, compel or coerce the doing of any of the acts forbidden under this chapter or to attempt to do so.” Where, as discussed above, Fernald School will be held liable if plaintiff proves her underlying claims of race discrimination, sex discrimination or sexual harassment, it is unclear what is gained by plaintiffs’ further assertion that Fernald School “aided and abetted” Bruk’s alleged violations of G.L.c. 15 IB. As the employer of the supervisor that was allegedly committing'these violations, Fernald School would be held liable irrespective of whether it was “aiding” or “abetting” Bruk. This allegation is completely superfluous of the underlying claims for sexual harassment and race and sex discrimination and will therefore be stricken.
7.State Civil Rights Act (G.L.c. 12, §1II)
Richards concedes that she cannot bring a claim against Fernald School under G.L.c. 12, §111. Commonwealth v. ELM Medical Laboratories, Inc., 33 Mass.App.Ct. 71, 74-80 (1992). As to defendant Bruk, plaintiff cannot pursue a civil rights act claim that would be covered by G.L.c. 151B, as G.L.c. 151Bisthe exclusive remedy for such misconduct. See Green v. Wyman-Gordon Co., 422 Mass. 551 (1996); Charland v. Muzi Motors, Inc., 417 Mass. 580, 586 (1994).
8.Common-law claims against Fernald School
Fernald School is a public employer within the meaning of the Massachusetts Tort Claims Act. Plaintiff concedes that her claims of intentional torts (intentional interference with contractual relations, intentional infliction of emotional distress, and assault) are barred by G.L.c. 258, § 10(c). As to the claim for negligent hiring and supervision, -plaintiff also concedes that her failure to make presentment as required by G.L.c. 258, §4 bars her negligence claim against Fernald School.
9.Common-law claims against Bruk
To the extent that plaintiffs’ common-law claims against Bruk “are merely recast versions of her sexual harassment claims under G.L.c. 151B, they are barred by that statute’s exclusivity provisions.” Green v. Wyman-Gordon Co., 422 Mass. 551, 558 (1996). Richards’ complaint of intentional infliction of emotional distress (Amended Complaint, ¶22) is purely a repetition of her claim of sexual harassment, and her exclusive remedy was therefore under G.L.c. 15 IB.
Her other common-law claims (intentional interference with contractual relations, assault, and negligent hiring and supervision) all complain merely of Bruk’s “screaming” and “abrasive behavior.”[7] The Workers Compensation Act, G.L.c. 152, §24, “provides the exclusive remedy against co employees who engage in tortious conduct within the course of their employment and in furtherance of their employer’s interest.” Brown v. Nutter, McLennen & Fish, 45 Mass.App.Ct. 212, 216 (1998). However, that immunity does not extend to tortious acts committed by co employees “outside the scope of their employment, which are unrelated to the interest of the employer.” Id.
Here, the conduct complained of all took place within the scope of Bruk’s employment. The question, then, is whether, the acts complained of were “unrelated” to the interests of Fernald School. Bruk’s refusals of requests for time off, regulation of access to work equipment, tone of voice used in criticizing an employee, and disciplinary reports about an employee are all, even if unjust or unwarranted, “related” to the interests of the employer. See Anzalone v. Massachusetts Bay Transportation Authority, 403 Mass. 119, 124-25 (1988); Fusaro v. Blakey, 40 Mass.App.Ct. 120, 123-24 (1996). Richards points to nothing Bruk did that was outside the scope of his supervisory duties over her. She cannot bring tort claims against him based on what she perceives as an abusive or abrasive style of supervision, as such claims are barred by G.L.c. 152, §24.
*184 ORDER
For the foregoing reasons, defendant John Bruk’s motion for summary judgment is ALLOWED, and defendant Walter Fernald State School’s motion for summary judgment is ALLOWED in part and DENIED in part as follows:
1. Walter Fernald State School’s motion is allowed with respect to all G.L.c. 151B claims based on alleged incidents of discrimination and sexual harassment occurring prior to June 1, 1993;
2. Walter Fernald State School’s motion is allowed with respect to all G.L.c. 15 IB claims for retaliation and aiding and abetting;
3. Walter Fernald State School’s motion is allowed with respect to all claims under G.L.c. 12, §1II;
4. Walter Fernald State School’s motion is allowed with respect to all common-law tort claims (intentional interference with contractual relations, intentional infliction of emotional distress, assault, and negligent hiring and supervision); and
5. Walter Fernald State School’s motion is denied with respect to all G.L.c. 15 IB claims of sexual harassment, sex discrimination and race discrimination based on alleged incidents occurring on or after June 1, 1993.

 Although initially suspended for three days based on that charge, Richards succeeded in her arbitration and got that suspension set aside.

 The background of this request and of Richards’ refusal to sign is not clarified in the record. There is a March 2, 1993 Return to Work Order signed by a physician indicating that Richards had been injured on September 1, 1991 but that she would be able to work with “no limitations” as of March 3, 1993. According to materials submitted later on to the MCAD, there was apparently some question raised thereafter as to whether Richards did or did not still have some medical condition that limited her ability to lift patients. On June 15, 1993, the memo she was asked to sign read as follows: “In accordance with our conversation over issue of lifting of residents, on the night of Sunday, June 13, 1993 at Cottage 3, my understanding of your status is that you are able to lift as required by your responsibilities as MRW 1. If this is not the case, please provide medical documentation to Jim O’Connor, HRS of Division 6, or myself immediately.” Plaintiffs refusal to confirm that she was fit for work or, if not fit for work, to produce medical confirmation of her medical restrictions is inexplicable on this record.

 After hearing held on December 9, 1993, Richards was cleared of the charge of sleeping while on duty, but she was found to have been “inattentive to her duties,” for which she received a three-day suspension.

 Defendant also rightly points out that the filing of this action in court was untimely, as her March 1996 complaint was filed more than three years after the alleged discrimination in 1992. G.L.c. 15 IB, §9.

 Although Richards did not expressly complain about sexual harassment at that November 1992 meeting, her version of the facts demonstrates that, at the very least, she “should have been aware” of that theory of discrimination by that time. Where her sexual harassment claim is predicated upon Bruk’s multiple requests for dates, followed by a threat that she “will regret” her decision to reject him, and then followed by screaming, denying her necessary equipment, and refusing to approve her leave requests (when other employees are allegedly having their leave approved), plaintiff is surely charged with awareness of this alleged retaliation for having declined Bruk’s requests for dates. Having been threatened with retaliation and having thereafter experienced what she immediately recognized as unjust and unwarranted treatment in the workplace, she certainly “should have been aware” that that unjust and unwarranted treatment was the retaliation that had been threatened. Particularly where Richards was represented by counsel in the fall of 1992 for the express purpose of challenging discriminatory treatment by Bruk, she will be held to an awareness of both her potential race and sex discrimination claims and her potential sexual harassment claims as of the fall of 1992.

 Fernald School’s summary judgment motion addresses only a hostile environment theory of sexual harassment and simply assumes that plaintiff is not pressing a theory of quid pro quo harassment. Memorandum in Support of Motion for Summary Judgment, p. 17 n.24. Where the alleged June 15, 1993 incident could, if proved, arguably make out a claim of quid pro quo sexual harassment, this court will not address the alternative theory that Bruk's behavior subjected Richards to a sexually hostile work environment. Either theory would support a sexual harassment claim, and thus defendant is not entitled to summary judgment on the sexual harassment claim.

 The allegations against Bruk fail to make out the requisite elements of the torts alleged. Richards’ claim of intentional interference with contractual relations alleges only that Bruk screamed at her on two occasions without justification. Nowhere does she allege, nor does she have any evidence, that this screaming caused Fernald School to breach or modify its contract with her. Nor did the alleged screaming, as described by plaintiff, threaten her with any form of imminent bodily injury. A loud or angry tone of voice, unconnected with any spoken threat or gesture, does not suffice to make out the tort of assault. Finally, Bruk can not be liable for “negligent hiring and supervision” of himself.