Staffier-Holtz, Nancy, J.

INTRODUCTION

The defendants have moved for summary judgment pursuant to Mass.R.Civ.P. Rule 56 on all counts. For the reasons set forth below, that motion is allowed in part and denied in part.

DISCUSSION

Gender Discrimination

General Laws chapter 151B, §4(1) provides that:
It shall be unlawful... [for an employer, by himself or his agent, because of the . . . sex ... of any individual, to refuse to hire or employ or bar or to discharge from employment such individual or discriminate against such individual in compensation or in terms, conditions, or privileges of employment, unless based upon a bona fide occupational qualification.
Thus, in order to prove a claim of discrimination, the plaintiff must prove four elements: 1) that she is a member of a protected class; 2) that she suffered an adverse employment action; 3) that there was discriminatory animus; and 4) that the discriminatory animus caused the adverse employment action. Lipchitz v. Raytheon Co., 434 Mass. 493, 502 (2001).
In the context of a discrimination case based on disparate treatment, summary judgment is a disfavored remedy. Matthews v. Ocean Spray Cranberries, Inc., 426 Mass. 122, 127 (1997), citing Blare v. Husky Injection Molding Sys. Boston, Inc., 419 Mass. 437, 439 (1995). “The ultimate question of the defendants’ state of mind is elusive and rarely is established by [anything] other than circumstantial evidence . . . which requires the jury to weigh the credibility of conflicting explanations of the adverse [employer conduct].” Blare, 419 Mass, at 439-40, citing Wheelock College v. Massachusetts Comm’n Against Discrimination, 371 Mass. 130, 137 (1976). Nevertheless, summary judgment may be appropriate if the plaintiff fails to offer *67 admissible evidence “of the defendant’s discriminatoiy intent, motive, or state of mind sufficient to cany the plaintiffs burdens and support a judgment in the plaintiffs favor.” Matthews, 426 Mass. at 127, citing Blare, 419 Mass. at 440.
The defendants argue that the plaintiffs gender discrimination claim is time barred because she did not file a complaint with the Massachusetts Commission Against Discrimination (“MCAD”) within six months of the alleged act of discrimination, as was required by G.L.c. 151B, §5 at the time the conduct occurred.[1] The six-month filing requirement serves two puiposes: (1) it provides the MCAD with an opportunity to investigate the discrimination claim; and (2) it provides notice to the defendant of potential liability. Cuddyer v. Stop & Shop Supermarket Co., 434 Mass. 521, 531 (2001); Carter v. Commissioner of Correction, 43 Mass.App.Ct. 212, 217 (1997).
The plaintiff filed her charge of discrimination with MCAD on January 23, 2003. The defendants claim that the statute of limitations began running on July 19, 2002, the date of Persuitte’s last contact with the plaintiff. “[T]he proper focus [for determining when a statute of limitations period commences] is upon the time of the discriminatoiy acts, not upon the time at which the consequences of the acts became most painful.” Adamczyk v. Augat, 52 Mass.App.Ct. 717, 721 (2001), quoting School Comm. of Brockton v. Massachusetts Comm’n Against Discrimination, 423 Mass. 7, 11 n.8 (1996) (emphasis in original), quoting from Delaware State College v. Ricks, 449 U.S. 250, 258 (1980). Thus, if July 19, 2002 is the pivotal date, then the plaintiff filed four days after six months had run and the claim is time barred.
However, the plaintiff claims that she suffered from discrimination of a continuing nature and that it actually continued until June 29, 2002. The presence of “continuing violations” can provide an exception to the six-month statute of limitations pursuant to 804 Code Mass. Regs. §1.03(2). Ocean Spray Cranberries v. Mass. Comm’n Against Discrimination, 441 Mass. 632, 642 (2004); see Clifton v. Massachusetts Bay Transp. Auth, 445 Mass. 611, 616-17 (2005).[2] This exception “recognizes that some claims of discrimination involve a series of related events that have to be viewed in their totality in order to assess adequately their discriminatoiy nature and impact.” Cuddyer, 434 Mass, at 531. For the continuing violation doctrine to apply, the plaintiff generally must prove that: “(1) at least one discriminatoiy act occurred within the six month limitations period; (2) the alleged timely discriminatory acts have a substantial relationship to the alleged untimely discriminatoiy acts . . . [and] (3) earlier violations outside the six-month limitations period did not trigger [the plaintiffs] ‘awareness and duly’ to assert his rights.” Ocean Spray Cranberries, 441 Mass, at 642-43.[3] The conduct that occurred within the six months must be sufficient to anchor the earlier incidents. See Cuddyer, 434 Mass. at 532. The anchoring conduct alone need not necessarily support her claim, but it must substantially relate and contribute to the alleged course of discriminatory conduct. See Cuddyer, 434 Mass. at 533. Still, “mere effects or consequences of past discrimination, as opposed to independently actionable violations . . . are insufficient to serve as the trigger of the limitations period.” Rufftno v. State Street Bank and Trust, 908 F.Sup. 1019 (Mass. 1995), quoting Kassaye v. Bryant College, 999 F.2d 603, 606 (1st Cir. 1993). With regard to the plaintiffs awareness and duty, she may claim the continuing violation exception “unless the plaintiff knew or reasonably should have known that her work situation was pervasively hostile and unlikely to improve, and, thus, a reasonable person in her position would have filed a complaint with the MCAD before the statute ran on that conduct.” Cuddyer, 434 Mass. at 539.
In evaluating the issue of reasonableness the question is whether the events of July 29, 2002 constituted a sufficient anchor based upon the pattern of Persuitte’s behavior. However, based upon the facts presented, a juiy could not reasonably find that the plaintiff did not know that her situation was not likely to be remedied before the statute of limitations ran on that conduct. Cf. id. at 540. Objectively, plaintiffs delay in bringing the claim was unreasonable after experiencing such conduct for so many years at UPS, despite numerous transfers, and after approximately nine months of Persuitte’s disparaging treatment as her supervisor.

II. Sexual Harassment

Based upon the above analysis, the plaintiffs claim for sexual harassment on a theoiy of hostile work environment is also time barred.

III. Constructive Discharge

As stated above, pursuant to G.L.c. 15 IB, it is unlawful for an employer to refuse to employ, to discharge, or to discriminate in compensation, conditions, or privileges of employment against an individual based upon their sex. Thus, a plaintiff may allege, in support of a discrimination claim, that she was constructively discharged because her working conditions were “so difficult as to be intolerable.” GTE Products Corp. v. Stewart; Langford, 421 Mass. 22, 33-34 (1995). Still, as the defendants assert, constructive discharge is not a freestanding claim under Massachusetts law.
Where applicable, the comprehensive remedial scheme provided in chapter 15 IB is exclusive, unless otherwise commanded by the legislature. Green v. Wyman-Gordon Co., 422 Mass. 551, 557-58 (1996); see Melley v. Gillette Corp., 19 Mass.App.Ct. 511, 513-14 (1985), affirmed, 397 Mass. 1004 (1986); Mouradian v. General Electric Co., 23 Mass.App.Ct. 538, 543 (1987) (finding that provisions of the Civil *68 Rights Act did not create an independent cause of action for claims that may have been asserted under chapter 151B, had the plaintiff complied with the statute of limitations). The legislature has made no such exception with regard to the claim of constructive discharge. If the court were “[t]o permit such duplication of remedies” it “would allow claimants to bypass the procedural prerequisites defined by the [LJegislature in [G.L.c. 151B], crippling the effectiveness of this specific statutory remedy for discrimination in employment.” Green, 422 Mass. at 558 (1996), quoting, Bergeson v. Franchi, 783 F.Sup. 713, 721 (D.Mass. 1992); Melley, 19 Mass.App.Ct. at 513-14 (distinguishing between claims duplicative of those available under G.L.c. 151B and common-law tort claims available prior to the enactment of G.L.c. 151B).
To support the legitimacy of her claim, the plaintiff relies on GTE Products Corp. and on Rubin v. Household Commercial Financial Services, Inc., 51 Mass.App.Ct. 432 (2001). In GTE Products Corp., the Supreme Judicial Court recognized that in-house counsel can have a cause of action for wrongful discharge in limited circumstances where the demands of the employer would have forced counsel to violate ethical rules. See GTE Products Corp., 421 Mass. at 29-30, 33. Obviously necessary to the plaintiffs wrongful discharge claim was a determination that he was actually discharged. Because the plaintiff was not actually terminated, the Supreme Judicial Court had to conduct an analysis of constructive discharge, ultimately finding that the plaintiff failed to present sufficient proof of constructive discharge to support the wrongful discharge claim. Id. at 33. Rubin is similarly inapposite, as the plaintiff advanced claims of intentional interference with contract and breach of fiduciary duty. Rubin, 51 Mass.App.Ct. at 433. The Appeals Court held that a finding that the plaintiff was constructively discharged was “ ‘vital’ to both of his claims” and carefully examined the issue for that purpose alone. Id. at 439. While both cases address the legal theory of constructive discharge, neither case indicates that it is a cause of action in and of itself. It is not for this court to create a remedy which is not otherwise recognized in law.

IV. Breach of Contract

The plaintiff alleges that UPS created a binding contract with her “through the terms of oral representations, policy book, personal benefits statement package, incentive compensation plan, and sexual harassment policy.” Plaintiffs Complaint, para. 87. Further, UPS breached said contract when it failed to investigate the sexual harassment against her, to take appropriate remedial action, to promptly handle complaints, to keep personal information confidential, to pay the plaintiff for all of the hours she worked, and to issue the plaintiff her bonus and stock. Id., paras. 88-89.
Massachusetts courts have found that company policy books, and particularly personnel manuals, distributed by employers to employees can create a binding commitment insofar as employees have a reasonable expectation that the employer will adhere to the policies expressed therein. See O’Brien v. New England Telephone and Telegraph Co., 422 Mass. 686, 694 (1996); Ferguson v. Host Intl, 53 Mass.App.Ct. 96, 101-03 (2001).[4] Still, a company cannot generally be liable for breach of contract based on company policy if the employee does not exhaust the remedies provided by that policy. See O’Brien, 422 Mass, at 695-96 (finding that an employee who failed to follow the grievance procedure set forth in the employer’s personnel manual could not sue the employer for wrongful termination by asserting a right under the personnel manual).
According to UPS policy:
Employees who believe they are being harassed should request the conduct to cease. They should take any complaint to their supervisor and/or Human Resources manager. Managers and supervisors are responsible for maintaining an environment free of sexual harassment. That responsibility includes reporting incidents of sexual harassment to the appropriate management people.
Professional Conduct Statement signed by Robert Persuitte, Plaintiffs Exh. 7.
Here, the plaintiff states that she did, in the past, report the strip club passes incident to her subordinates’s, Busch and Honaker, sabotage of her operation to management. However, the plaintiff did not file an internal complaint with UPS or voice her concerns with other managers or human resources concerning Persuitte’s behavior or about the other allegedly discriminatory or harassing behavior of other employees. See Mary Martin-Kirkland Deposition, 83-84, 131, 139-40. As she did not adhere to the internal grievance procedure provided in the policy, the plaintiff cannot now assert a claim under that policy. See O'Brien, 422 Mass. at 695-96.
The plaintiff argues that the UPS Policy Book states that UPS compensates its employees fairly and that they receive compensation in addition to salary. Nevertheless, the plaintiff has not identified a particular document which guarantees her the wages, stock, and a bonus that she has not yet been paid. UPS paid the plaintiffs salary through September 26, 2002 and awarded her stock for the year ending September 30, 2002, a “Manager’s Incentive Award.” UPS did not pay the plaintiff her discretionary Christmas bonus of half of one month’s salary at the end of2002. According to the plaintiffs 2002 UPS Total Compensation Package, the “Additional Half-month Pay” and the “Managers Incentive Plan” are “(s)ubject to annual recommendation.” 2002 UPS Total Compensation Package, Plaintiffs Exh. 9, at 16. Based on the evidence pre *69 sented, the plaintiff has failed to state a claim for breach of contract.

V. Tortious Interference with Advantageous Relations

The plaintiff alleges that Persuitte tortiously interfered with her advantageous relationship with UPS. For an employee to prove this claim, she must show that “(1) she had an advantageous employment relationship with her employer; (2) the defendant knowingly induced the employer to break that relationship; (3) the defendant’s interference, in addition to being intentional, was improper in motive or means; and (4) the employee was harmed by the defendant’s actions.” Weber v. Cmty. Teamwork, Inc., 434 Mass. 761, 781 (2001), see also United Truck Leasing Corp. v. Geltman, 406 Mass. 811, 812 (1990).[5] Where, as here, the claim is against an individual official of the employer, the “controlling factor” in the alleged interference must rise to the level of “actual” malice. Weber, 434 Mass. at 781-82 (citations omitted). For this purpose, actual malice constitutes “ ‘a spiteful, malignant purpose, unrelated to the legitimate corporate interest’ of the employer.” Id. at 782 (stating also that even a finding of intentional status-based discrimination does not necessarily support an inference of actual malice), quoting Boothby v. Texon, Inc., 414 Mass. 468, 487 (1993).
The evidence gleaned from the summary judgment record does not permit an inference that Persuitte acted with actual malice in his interactions with the plaintiff. See Shea v. Emmanuel College, 425 Mass. 761, 764 (1997); Weber, 434 Mass1 at 783. The plaintiff stated in her deposition that she believed that Persuitte held malice or ill will toward her because she was not making her numbers or following his instructions specifically in relation to drivers that needed to be terminated. Mary Martin-Kirkland Deposition, 88. While the plaintiff does allege actions and treatment by Persuitte which may have been inappropriate or overly abrasive, she has failed to demonstrate that his purpose was unrelated to the corporate interests of UPS and has also failed to given evidence that Persuitte possessed the requisite state of mind. See Shea, 425 Mass. at 764; Weber, 434 Mass. at 783. In fact, the plaintiff has demonstrated the opposite; her failure, for instance, to fulfill her numerical goals and to terminate sub-par drivers is precisely within the realm of UPS’s concerns. As a result, UPS is entitled to summary judgment with regard to this claim.
V7. Negligence
The plaintiff alleges that UPS committed negligence when it breached its duty to exercise reasonable care in the supervision of its employees, particularly, in implementing equal opportunity and sexual harassment policies that mandate the investigation and resolution of complaints of sex discrimination. UPS asserts that this claim is barred by section 24 of the Workers’ Compensation Act, G.L.c. 152, §24.[6] Section 24 is “a comprehensive preemption provision precluding injured workers from instituting tort actions ‘in respect to an [employment-related] injuiy that is compensable [through the payment of disability benefits] under this chapter.’ ” Clarke v. Kentucky Fried Chicken of California, 57 F.3d 21, 28 (1st Cir. 1995), quoting G.L.c. 152, §24.[7] Personal injuries under the Workers’ Compensation Act,
[S]hall include mental or emotional disabilities only where the predominant contributing cause of such disability is an event or series of events occurring within any employment... No mental or emotional disability arising principally out of a bona fide, personal action including a transfer, promotion, demotion, or termination except such action which is the intentional infliction of emotional harm shall be deemed to be a personal injuiy within the meaning of this chapter.
G.L.c. 152, §1(7A). Therefore, common-law actions against the employer are barred by section 24 if: (1) the plaintiff is an employee, (2) her condition constitutes a personal injuiy within the meaning of section 1, and (3) the injuiy arose in the course of employment. Green v. Wyman-Gordan Co., 422 Mass. 551, 558-59 (1996), quoting Foley v. Polaroid Corp., 381 Mass. 545, 548-49 (1980) (Foley I); Brown v. Nutter, McClennen & Fish, 45 Mass.App.Ct. 212, 215 (1998).
It is clear that the plaintiff was an employee of UPS during the relevant period and that she suffered a “personal injuiy” in the course of her employment. In addition, the plaintiffs mental or emotional disability did not arise principally out of a bona fide personnel action. Consequently, based upon the personal injuries the plaintiff claims to have suffered and the nature of UPS’s alleged negligence, the plaintiffs claim is barred by section 24 of the Workers’ Compensations Act. See Ruffino v. State Street Bank and Trust, 908 F.Sup. 1019, 1052 (D.Mass. 1995) (finding preempted a plaintiffs claim that her employer and supervisors “negligently supervised and retained [the harassing employee] by failing to prevent his harassment of and discrimination against [the plaintiff] and then for failing to investigate her reports of such conduct”).

VII. Intentional Infliction of Emotional Distress

The plaintiff brings a claim of intentional infliction of emotional distress against Persuitte. Persuitte asserts that this claim is similarly barred by section 24 of the Workers’ Compensation Act. As indicated above, in addition to providing an exclusive remedy against employers, the Act “provides the exclusive remedy against coemployees who engage in tortious conduct within the course of their employment and in furtherance of the employer’s interest.” Brown, 45 Mass.App.Ct. at 216; Anzalone v. Massachusetts Bay Transportation Authority, 403 Mass. 119, 124 (1988); see Fredette v. Simpson, 440 Mass. 263, 266 (2003). In the case of tortious conduct by co-employees the court must also assess whether the co-employee’s *70 conduct “arose within the course of his employment and whether it furthered [the employer’s] interest.” Brown, 45 Mass.App.Ct. at 217.
An employee acts in the course of his employment when, on the employer’s premises, he engages in “conduct consistent with his contract of hire and pertinent or incidental to his employment.” Fredette, 440 Mass. at 266, citing Muford v. Mangano, 418 Mass. 407, 411 (1994). As long as one significant purpose behind the employee’s conduct is related to his employment, the conduct is considered within the course of employment. Fredette, 440 Mass. at 266, citing Mendes v. Tin Kee Ng, 400 Mass. 131, 134-35 (1987).
Comparable to the present case, Anzalone involved a claim for intentional infliction of emotional distress arising from the conduct of a supervisor. Anzalone, 403 Mass, at 122-23. Anzalone sued his supervisor and the Massachusetts Bay Transportation Authority, alleging that his supervisor intentionally harassed him and interfered with his employment by criticizing his performance, ordering him to perform menial and dirty jobs, and requiring him to work in an overheated and unventilated room, among other things. Id. The Supreme Judicial Court held that the complained of conduct arose in the course of employment, as it “related wholly to his position as Anzalone’s supervisor and to the manner in which [he] exercised his supervisory duties.” Id. at 125. As a result, the claims were barred by the Workers’ Compensation Act. Id.
Here, it is clear that the plaintiff was an employee during the relevant period and the injuries she has alleged fall within the purview of the Workers’ Compensation Act.[8] Because it is not disputed that one reason behind Persuitte’s conduct was the plaintiffs failure to meet her numbers and his conduct fit within the boundaries of conduct related to his position as the plaintiffs supervisor, the claim for intentional infliction of emotional distress is barred. See id.; Fusaro v. Blakey, 40 Mass.App.Ct. 120, 124 (1996) (“However distorted the defendants’ understanding of the proper performance of their duties may have been, we cannot say that they were acting outside the scope of their employment”); contra O’Connell v. Chasdi, 400 Mass. 686, 687, 690 n.5 (1987) (finding that the supervisor’s conduct in course of employment, which consisted of a “series of sexual advances and other objectionable actions of a sexual nature,” was “not remotely related to the employer’s interests”).

VIII.Negligent Infliction of Emotional Distress

In addition, the plaintiff claims that both Persuitte and UPS negligently inflicted emotional distress upon her. In accordance with the preceding analysis, this claim is barred by section 24 of the Workers’ Compensation Act. See Green, 422 Mass. at 560 (“There is no question that an action for negligent infliction of emotional distress that is not the result of a bona fide personnel action is barred by the exclusivity provision of the workers’ compensation act”).

IX.Massachusetts Civil Rights Act

The plaintiff alleges, that by discriminating against her, UPS, through its agents, threatened, intimidated, and coerced her, and interfered with her right to equality in violation of Article 1 of the Massachusetts Declaration of Rights and the Massachusetts Civil Rights Act, G.L.c. 12, §§H, I, resulting in the foreseeable loss of income, fringe benefits, and personal reputation, along with other financial losses. Plaintiffs Complaint, para. 107.[9] “A work environment pervaded by harassment or abuse, with the resulting intimidation, humiliation, and stigmatization, poses a formidable barrier to the full participation of an individual in the workplace.” O’Connell 400 Mass, at 693 (citations omitted).
Nevertheless, the defendants argue that the plaintiffs claim under the Massachusetts Civil Rights Act is barred by G.L.c. 151B. “Where, as here, c. 151B applies, its comprehensive remedial scheme is exclusive, in the absence of an explicit legislative command to the contraiy.” Green, 422 Mass. at 557-58. Chapter 151B is applicable to the plaintiffs claim and, as determined above, the plaintiff failed to file a timely complaint to MCAD. Consequently, she is not permitted to maintain a civil suit pursuant to the Massachusetts Civil Rights Act based upon the same discriminatoiy treatment. See Charland v. Muzi Motors, Inc., 417 Mass. 580, 583-84 (1994). The plaintiffs case does not fit within the prospective exception mentioned by the Appeals Court in Mouradian, 23 Mass.App.Ct. at 543 (stating that “[t]here any be a case in which the termination of an at-will employee could give rise to a tenable complaint seeking relief under G.L.c. 12, §§11H and 111,” but not where the right “could have been enforced under the procedures established by c. 15IB” absent the plaintiffs delay).

X.Breach of Privacy

The plaintiff alleges, pursuant to G.L.c. 214, §1B, that the defendants interfered with her privacy: UPS by breaching the confidentiality of her forced stay at the in-house alcohol treatment she attended and spreading the rumor that she was an alcoholic and Persuitte by subjecting her to unwarranted criticism in the presence of co-workers on a regular basis from December 2001 through July 2002. Plaintiffs Complaint, para. 109.[10] Section IB states that “[a] person shall have a right against unreasonable, substantial or serious interference with his privacy.” G.L.c. 214, §1B. Courts have interpreted the section “to proscribe the required disclosure of facts about an individual that are of a highly personal or intimate nature when there exists no legitimate, countervailing interest.” Bratt v. International Business Machines Corp., 392 Mass. 508, 518 (1984). Thus, an employer can breach an employee’s privacy by disclosing an employee’s private personal information without justification. See id.
The statute of limitations for a breach of privacy claim under section IB is three years. Finney v. *71 Madico, Inc., 42 Mass.App.Ct. 46, 52 (1997). The defendants assert that the prior portion of the plaintiffs claim is barred by the statute of limitations and that the entire claim is not supported by evidence. As the claims arise out of different events with respect to the defendants, they must be addressed separately.
The plaintiffs claim for breach of privacy against UPS pertains to events which occurred in the 1990s, following a period of forced alcohol treatment at Edgehill after violating company rules. The plaintiff became aware in the early 1990s that UPS employees were spreading rumors that she was an alcoholic. The Plaintiff provides no legal authority to warrant applying the “continuing violation” doctrine has not been applied to breach of privacy claims. The claim as pertaining to UPS disclosure of alcohol treatment is therefore time-barred. This does not, however, end the analysis of the breach of privacy issue.
The portion of the claim directed at Persuitte’s conduct relies on his harassment and general poor treatment of the plaintiff during meetings with her peers and subordinates. “(T]he disclosure of private facts about an employee through an intracorporate communication is sufficient publication to impair an employee’s right of privacy.” Bratt, 392 Mass. at 509-10, 518-19. This can include informing an employee’s subordinates of her performance problems. Williams v. Commonwealth. Limousine Service, Inc., 1999 WL 1331281 (Mass.Super, 1999) (9 Mass. L. Rptr. 493) (employer posted the plaintiff-employee’s termination letter in a public area on company property), citing Petch-Schmid v. Boston Edison Co., 914 F.Sup. 697, 707 (D.Mass. 1996). Determining whether an employer’s disclosure amounts to interference with the employee’s privacy requires balancing the legitimate business interest of the employer in disclosing the information “against the nature and substantiality of the intrusion.” Bratt, 392 Mass, at 510. Viewing the record in the light most favorable to the plaintiff, there exists an issue of material fact and judgment as a matter of law is not appropriate on the plaintiffs claim for breach of privacy arising from Persuitte’s conduct. See Williams, 1999 WL at *1.
The plaintiff also argues that UPS is responsible for the aforementioned breach of privacy based upon Persuitte’s conduct on a theoiy of respondent superior. “Broadly speaking, respondent superior is the proposition that an employer, or master, should be held vicariously liable for the torts of its employee, or servant, committed within the scope of employment.” Dias v. Brigham Med. Assocs., Inc., 438 Mass. 317, 319-20 (2002). Employers can be subject to vicarious liability for the intentional tort of an agent, so long as it is committed within the scope of employment. Worcester Ins. Co. v. Fells Acres Day School Inc., 408 Mass. 393, 404 (1990); Sarvis v. Boston Safe Deposit and Trust 47 Mass.App.Ct. 86, 96 (1999). An agent’s conduct is within the scope of employment if: (1) it is of the kind the agent is employed to perform; (2) it occurs substantially within authorized time and space limits; and (3) it is motivated, at least partially, by the purpose of serving the employer. Wang Laboratories, Inc. v. Business Incentives, Inc., 398 Mass. 854, 859 (1986) (citations omitted); Worcester Ins. Co., 408 Mass. at 404. Essentially, a predominantly self-serving motive “does not prevent the act from coming within the scope of employment as long as the act is otherwise within the purview of his authority.” Id. at 859-60.
Once again, because Persuitte’s behavior was related to the interests of UPS insofar as it dealt with the plaintiffs performance in general and, specifically, her failure to meet her projected numbers, his conduct was within the scope of employment. Thus, UPS can be held vicariously liable on the breach of privacy claim.

XI. Defamation

The plaintiffs defamation claim against UPS, through the actions of its employees and agents, and Persuitte rests upon the same facts as her breach of privacy claim. She further alleges that the statements made were false and defamatory, and were published with reckless disregard for the truth, causing emotional distress, damage to her reputation and career, mental pain and anguish, and humiliation. Plaintiffs Complaint, para. 114. The defendants argue that the claim is time-barred in part and that the entire claim lacks sufficient evidentiary support to proceed. As above, without reaching the merits of the alleged defamation arising out of UPS employees revealing her alcohol treatment attendance and spreading rumors that she was an alcoholic, that portion of the claim is time-barred. G.L.c. 260, §4 (stating that the statute of limitations for actions of libel, slander, and a host of other torts must be commenced within three years).
To make a case for defamation, the plaintiff must establish that “the defendant was at fault for the publication of a false statement regarding the plaintiff, capable of damaging the plaintiffs reputation in the communily, which either caused economic loss or is actionable without proof of economic loss.” Dragonas v. School Committee of Melrose, 64 Mass.App.Ct. 429, 437 (2005). In the employment context, “(a]n employer has a conditional privilege to disclose defamatory information concerning an employee when the publication is reasonably necessary to serve the employer’s legitimate interest in the fitness of an employee to perform his or her job.” Foley v. Polaroid Corp., 400 Mass. 82, 94 (1987) (Foley II), quoting Bratt, 392 Mass. at 509 (other citations omitted).
The defendant may lose this conditional privilege if the plaintiff proves that the defendant recklessly published the defamatory information, requiring that publication was unnecessary, unreasonable, or excessive. Foley II, 400 Mass. at 95; Bratt, 392 Mass. at 515-16. Knowingly false statements or statements made with a reckless disregard for the truth would constitute reckless statements under the standard. Foley II, 400 Mass. at 95, citing Bratt, 392 Mass. at 514, Tosti v. *72 Ayik, 386 Mass. 721, 726 (1982); Skylar v. Beth Israel Deaconess Medical Center, 59 Mass.App.Ct. 550, 558 (2003). The privilege may also be extinguished if the plaintiff can prove that the defendant acted with malice. Dragonas, 64 Mass.App.Ct. at 438. Malice, for the purpose of the privilege, occurs when the “defamatory words, although spoken on a privileged occasion, were not spoken pursuant to the right and duty which created the privilege but were spoken out of some base ulterior motive.” Id., quoting Dexter’s Hearthside Restaurant, Inc. v. Whitehall Co., 24 Mass.App.Ct. 217, 223 (1987). The ulterior motive can be the direct intent to injure, the intent to abuse the privilege by using it as a pretense, or the reckless disregard of the rights of another. See Dragonas, 64 Mass.App.Ct. at 438-39 (citations omitted). However, the defendant only loses the conditional privilege “if the publication is not made chiefly for the purpose of furthering the interest which is entitled to protection.” Id. at 439, quoting Ezekiel v. Jones Motor Co., Inc., 374 Mass. 382, 390 n.4 (1978).
Here, the plaintiff specifically bases her claim against Persuitte on his statements regarding her failure to meet her numbers, his derogatory comments about her management skills during daily conference calls, and his screaming of obscenities, all in front of her co-workers. The summary judgment record provides sufficient evidence to create an issue of fact regarding the possible defamatory nature of Persuitte’s statements. See Poland v. Post Publishing Co., 330 Mass. 701, 704 (1953) (“Words maybe found to be defamatory if they hold the plaintiff up to contempt, hatred, scorn, or ridicule, or tend to impair his standing in the Community”). Due to the fact that Persuitte’s statements about the plaintiffs failure to meet her numbers are true, they cannot be defamatory. However, while the plaintiffs failure to meet her numbers may be considered indicative of her skills as a manager, there remains a question of fact as to the truthfulness of Persuitte’s remaining statements.
Even assuming the plaintiffs allegations are true, UPS and Persuitte, as her supervisor, qualify for the conditional privilege because his allegedly defamatory comments were reasonably related to her fitness as an employee and UPS’s interest therein. Nevertheless, the plaintiff claims that Persuitte made the statements with the intent to injure her management authority and to demean her, using her work performance as a mere pretext. She has provided sufficient evidence to create a question of fact concerning whether Persuitte’s defamatory statements were driven by malice. In accordance with the respondent superior analysis above, UPS can likewise be held liable on the charge of defamation for Persuitte’s conduct.

XII. Nonpayment of Wages

The plaintiff concedes that her claim for nonpayment of wages should be dismissed. Plaintiff s Statement of Legal Elements, para. 12.

ORDER

It is hereby ORDERED that summary judgment be granted as to Counts I, II, III, IV, V, VI, VII, VIII, IX and XII of plaintiffs complaint.
It is further ORDERED that Summary Judgment be DENIED as to Counts X and XI of plaintiffs complaint.

The amendment, which came into effect November 2, 2002, extended the limitations period to three hundred days. G.L.c. 151B, §5.

‘The complaint may be filed ... at any time within six months after the alleged unlawful conduct; provided, however, that the six month requirement shall not be a bar to filing in those instances where facts are alleged which indicate that the unlawful conduct complained of is of a continuing nature . . .” 804 Code Mass. Regs. §1.03(2).

Under federal law, there are two kinds of continuing violations: systemic and serial. Kassaye, 999 F.2d at 606, citing Jensen v. Frank, 912 F.2d 517, 522 (1st Cir. 1990). The plaintiff does not allege that the conduct is of the former variety, which requires that the violations are a result of an ongoing policy or practice of the employer, such as hiring, promotion, compensation, and training. Provencher v. CVS Pharmacy, 145 F.3d 5, 14 (1st Cir. 1998). A serial violation, on the other hand, “occurs where a chain of similar discriminatory acts emanating from the same discriminatory animus exists and where there has been some violation within the statute of limitations period that anchors the earlier claims.” Id.

UPS does not argue that the policy book had any reservation of rights of disclaimer of obligation. However, page iii of the policy book states: “The Policy Book is not a contract of employment and does not affect your rights as an employee of UPS.” UPS Policy Book, Plaintiffs Exh. 8, at iii.

A claim for tortious interference with advantageous relations is not barred by chapter 151B. See Comey v. Hill 387 Mass. 11, 19 (1982); Melley, 19 Mass.App.Ct. at 513-14.

‘Traditionally, the statutory bar to a common law claim under the workers’ compensation act is treated as a lack of subject matter jurisdiction.” Fusaro v. Blakely, 40 Mass.App.Ct. 120, 123 (1996) (citations omitted).

The plaintiff employee may nevertheless bring a suit barred by section 24 if she has reserved a right of action pursuant to the section. Anzalone v. Massachusetts Bay Transportation Authority, 403 Mass. 119, 124. The plaintiff does not assert that she reserved such a right.

The Supreme Judicial Court has held that, when “mental harm is the essence of the [claim],” as is the case in an intentional infliction of emotional distress claim, “it is an indispensable ingredient, and the claim is barred.” Green, 422 Mass. at 561, quoting Foley I., 381 Mass. at 552.

Article 1 of the Massachusetts Declaration of Rights, as amended, provides that: “All people are bom free and equal and have certain natural, essential and unalienable rights; among which may be reckoned the right of enjoying and defending their lives and liberties; that of acquiring, possessing, and protecting property; in fine, that of seeking and obtaining their safety and happiness. Equality under the law shall not be denied or abridged because of sex, race, color, creed or national origin.”

The court presently rejects the defendant’s assertion that the plaintiffs breach of privacy claim is merely a recast version of her claims under chapter 151B.